CHARLES HESTER ENTERPRISES, INC., *et al.*, Plaintiffs-Appellants, v. ILLINOIS FOUNDERS INSURANCE CO. *et al.*, Defendants-Appellees.

Fifth District   No. 5—84—0186

Opinion filed August 22, 1985.

B. Tad Armstrong, of Armstrong Law Offices, of Edwardsville, and Thomas A. Hill, of Mateyka, Hill & Hill, of Highland, for appellants.

Robert G. Heckenkamp, of Heckenkamp & Simhauser, P.C., of Springfield, and Carl W. Lee, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee First Financial Insurance Company.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen, Abigail K. Spreyer, and Robert J. Slobig, of counsel), for appellee Illinois Founders Insurance Company.

Lord, Bissell & Brook, of Chicago (Richard E. Mueller, of counsel), for appellees Underwriters at Lloyds, London, Continental Casualty Company, and Merit Insurance Company.

Donovan, Hatch & Constance, of Belleville (Michael B. Constance, of counsel), for appellee Progressive Casualty Insurance Company.

Dunham, Boman & Leskera, of East St. Louis (Howard F. Boman, of counsel), for appellee Western Casualty & Surety Company.

PRESIDING JUSTICE JONES delivered the opinion of the court:

Plaintiffs appeal a judgment and post-judgment order of the trial court that denied certification of a class for a class action suit and dismissed their 32-count third amended complaint with prejudice.

Plaintiffs' action was brought to recover actual and punitive dam-

ages, interest, court costs and attorney fees, and to obtain injunctive relief concerning premiums charged by defendant insurance companies in the sale of dramshop liability insurance providing coverage in excess of statutory limitations upon the liability of dramshops for bodily injury to one person. The named plaintiffs purport to represent themselves and all similarly situated persons that constitute a class as described in the several counts. The defendant companies are authorized to sell, and do sell, dramshop liability insurance to dramshops and owners of dramshop premises and insure against liability imposed by section 14 (now section 6—21) of the Liquor Control Act of 1934 (Dramshop Act) (Ill. Rev. Stat. 1983, ch. 43, par. 135). That section of the statute limits the liability it imposes to $15,000 for bodily injury to any one person. Plaintiffs alleged in their several counts that they had purchased dramshop liability insurance from the defendants that purported to insure plaintiffs from liability for personal injury in amounts in excess of $15,000 and paid a premium for such excess coverage. The premiums paid for the insurance coverage in amounts in excess of the maximum statutory liability furnish the basis for plaintiffs' action.

Plaintiffs seek recovery against defendants on four separate theories involving differing types of relief. First, they seek imposition of a constructive trust upon the premiums paid for the excessive coverage because of the unjust enrichment of defendants that occurred when they collected premiums for coverage beyond their liability exposure, together with an injunction against future sales of excessive coverage. Next, they allege fraud committed in selling coverage beyond the limits of legal liability, for which they seek only punitive damages and injunctive relief against future sales of excessive coverage. The plaintiffs further allege partial failure of consideration, an action sounding in contract that entitles them to a refund of the premiums paid for the excessive coverage and injunctive relief. Finally, the plaintiffs allege violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 263 et seq.), for which they seek an injunction against future sales of excessive coverage and a refund of the excessive premiums, punitive damages and attorney fees as provided in that Act.

Having before it the complaint, affidavits of the plaintiffs and their attorneys, answers to interrogatories and depositions of the plaintiffs, and following a course of procedural maneuvers that are unimportant here, the trial court denied plaintiffs' motion for certification of the plaintiffs' class and granted defendants' motions to dismiss the complaint. In its order denying class certification, the court

let stand a previous order upholding the element of numerosity but found that questions of fact and law were not common to the class and that the common questions did not predominate questions affecting individual numbers, that the representative parties would not fairly or adequately protect the interests of the class, and that the class action was not an appropriate method for the fair and efficient adjudication of the controversy. In granting final dismissal of plaintiffs' third amended complaint (hereinafter complaint), no further findings were made by the trial court. Motion for rehearing was denied and plaintiffs' appeal.

Plaintiffs' complaint does not allege any facts with respect to any particular purchase and sale of a dramshop insurance policy by any party plaintiff. Rather, the gravamen of all counts and forms of action turns upon the conceded fact that defendants sold dramshop liability insurance coverage for personal injury in excess of the statutory limit of liability of $15,000 and collected premiums therefor. Plaintiffs contend that their third amended complaint states a cause of action as to each of the theories of action mentioned and that the complaint, affidavits, answers to interrogatories and depositions made showing sufficient to indicate that the trial court erred in refusing to grant class certification.

The defendants argue that the third amended complaint does not state a cause of action in any of its counts and that there was sufficient information before the trial court to require the denial of class certification. The defendants' motions to dismiss were advanced with the inclusion of the following arguments:

a. The dramshop liability insurance policies issued by defendant companies provided that the issuer would indemnify the insured against all sums they might be required to pay by reason of sections 14 and 15 of the Liquor Control Act and *"all laws amendatory thereof"* (defendants' emphasis). All policies provide, and plaintiffs' third amended complaint even alleges, that defendant companies would pay amounts for which the insureds might become liable under the Dramshop Act "in force February 1, 1934, *and all laws amendatory thereof.*" (Defendants' emphasis.) Accordingly, if the legislature increases the liability of the insureds for personal injury, as they are asked to do in practically every session, the plaintiffs-insureds would have coverage to the extent of the "excess" amounts purchased. Insurance against this possible increased exposure the defendants term "sleep safe" insurance.

b. The third amended complaint contains no allegation of any

misrepresentation of any fact made by any defendant.

c. No one compelled any plaintiff to purchase dramshop liability insurance in any amount; plaintiffs were free to purchase coverage in any amount equal to, greater than or less than the $15,000 amount or not at all.

d. The plaintiffs dealt with insurance brokers, not agents of the defendant companies, and the defendants made no representations at all to the plaintiffs.

e. Some dramshop operators have possession of their premises under leases that require them to carry policies of dramshop liability insurance that afford coverage for personal injury in excess of the statutory limitation of $15,000, and instances of this are cited in the record.

f. Some of the plaintiffs purchased excess coverage for personal injury liability while knowing of the $15,000 limitation contained in the Dramshop Act.

g. The premiums charged for coverage in excess of the $15,000 limitation for personal injury were nominal.

Our initial concern must be with the judgment that dismissed the complaint as failing to state a cause of action. No findings were made or reason for its ruling were given by the trial court in its judgment. In our consideration of the case on appeal we follow the course suggested by *Schlessinger v. Olsen* (1981), 86 Ill. 2d 314, 427 N.E.2d 122, and *Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, 377 N.E.2d 813, and first consider whether plaintiffs' third amended complaint states a cause of action in any of its counts. If plaintiffs' complaint does not state a cause of action, then, of course, there would be no occasion to consider any alleged error with regard to the refusal of the trial court to certify the class. In our consideration of the sufficiency of the complaint to state a cause of action, all well-pleaded allegations will be taken as true.

■■ The underlying factual allegations of all counts in plaintiffs' complaint are substantially the same, varying only to the extent necessary to assert separately the four different theories of recovery upon which plaintiffs rely. It should be said at this point that in considering the sufficiency of the complaint to state a cause of action we may consider only the allegations of the complaint, together with such exhibits or other materials it incorporates, and the relevant law. We may not test the sufficiency of the complaint by reference to evidentiary matters that may be elsewhere of record, such as depositions, affidavits, answers to interrogatories or other discovery materials. (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d

398, 312 N.E.2d 605; *Mutual Tobacco Co. v. Halpin* (1953), 414 Ill. 226, 111 N.E.2d 155; *O.K. Electric Co. v. Fernandes* (1982), 111 Ill. App. 3d 466, 444 N.E.2d 264; *Louis v. Barenfanger* (1967), 81 Ill. App. 2d 104, 226 N.E.2d 85.) We have included these remarks and citations because the parties have used factual matters from affidavits, answers to interrogatories and depositions in addressing arguments to the sufficiency of the complaint. Factual matters outside of the complaint are properly left to a consideration of a motion for summary judgment. *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605.

Eight counts of plaintiffs' complaint seek the imposition of a constructive trust, restitution for premiums paid for coverage sold in excess of $15,000 and an injunction against future sales. Plaintiffs' basis or theory of action for these counts is the "unjust enrichment" of the defendants by the collection of premiums for coverage where there was no exposure to liability.

The supreme court of this State has often set forth the criteria for imposition of a constructive trust:

> "Constructive trusts are divided into two general classes: one in which actual fraud is considered as equitable grounds for raising the trust, and the other, where there exists a fiduciary relationship and a subsequent abuse of such relationship." (*Ray v. Winter* (1977), 67 Ill. 2d 296, 303, 367 N.E.2d 678, 682, citing *Cunningham v. Cunningham* (1960), 20 Ill. 2d 500, 504, 170 N.E.2d 547, 550; *Mortell v. Beckman* (1959), 16 Ill. 2d 209, 212, 157 N.E.2d 63; *Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 493-94, 147 N.E.2d 69, 72; *Kester v. Crilly* (1950), 405 Ill. 425, 431, 91 N.E.2d 419, 423.)

"Unjust enrichment" is nowhere mentioned in the foregoing cases as one of the criteria that will give rise to a constructive trust. The counts of the complaint that seek to impose a constructive trust do not allege either fraud or a breach of a fiduciary relationship. Those counts are thus insufficient in law to state any cause of action against defendants.

It appears that plaintiffs may have misapprehended the meaning and import of the term "unjust enrichment." To use the term "unjust enrichment" as plaintiffs have done does not speak to the means, method or character of any conduct upon the part of the defendants that brought about the unjust enrichment. The term "unjust enrichment" is not descriptive of conduct that, standing alone, will justify an action for recovery. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as

fraud, duress or undue influence, and may be redressed by a cause of action based upon that improper conduct. In this case, for instance, if defendants had unjustly enriched themselves by fraud or by a breach of a fiduciary relationship, the plaintiffs could seek redress by a constructive trust or other theory of action.

■ This analysis was recognized by the supreme court in *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 328, 371 N.E.2d 634, where they noted that "[i]n equity a constructive trust may be imposed to redress unjust enrichment where there is either actual fraud or implied fraud resulting from a fiduciary relationship. [Citations.] Here there is no fiduciary relationship to support a constructive trust and the fraud charges are subsumed in count III." Here, as in *Steinberg*, there is no fiduciary relationship to support a constructive trust as alleged in the eight counts of the complaint, and the charges of fraud are made in other counts of the complaint. Accordingly, we find that the trial court properly dismissed those counts of plaintiffs' complaint that sought a constructive trust and other relief based upon unjust enrichment.

Plaintiffs rely on *Village of Wheeling v. Stavros* (1980), 89 Ill. App. 3d 450, 411 N.E.2d 1067, as authority for the proposition that an allegation of unjust enrichment, standing alone, is sufficient to raise a constructive trust. Such reliance is misplaced, however, because the court in the *Village of Wheeling* case followed the rules set forth above from *Ray v. Winter* and other supreme court cases, and it is our reading of *Village of Wheeling* that it does not constitute a deviation from the Illinois rule.

An additional eight counts of plaintiffs' complaint allege causes of action based upon fraud. No specific instances of fraudulent misrepresentation or conduct are set forth beyond that that may be implicit in the sale and issuance of the policies of insurance containing the excessive coverage for personal injury liability. The fraud counts allege that

"9. [The particular defendant company], through its authorized agents, knowingly marketed, sold and collected premiums for dram shop insurance coverage in excess of the statutory limit provided in Chapter 43, Section 135 for injury to one person knowing that, thereby, they had assumed no risk in excess of the aforesaid statutory limit.

10. [The particular defendant company], through its authorized agents, knowingly and with intent to deceive, has deprived the plaintiffs' class of these excessive premiums and thereby profited on the loss to the plaintiffs' class."

The prayer of all the fraud counts is for punitive damages only; there

is no request for compensatory damages.

The failure of plaintiffs to allege actual damage and to seek compensation therefor could alone be fatal to the counts of the complaint based upon charges of fraud. The rule in Illinois is that punitive damages may not be awarded in the absence of compensatory damages. *McMahon v. Sankey* (1890), 133 Ill. 636, 24 N.E. 1027; *In re Application of Busse* (1984), 124 Ill. App. 3d 433, 464 N.E.2d 651; *Lowe v. Norfolk & Western Ry. Co.* (1981), 96 Ill. App. 3d 637, 421 N.E.2d 971; *Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 300 N.E.2d 616.

But even without resort to the rule that bars recovery of punitive damages in the absence of actual damages, we find plaintiff's allegations of fraudulent misrepresentation to be insufficient to state a cause of action for fraud. The elements of a cause of action for fraudulent misrepresentation are false statement of material fact, known or believed to be false by the party making it, an intent to induce the other party to act, action by the other in reliance on the truth of the statement and damage to the other party resulting from such reliance. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599; *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) Furthermore, the reliance by the other party must be justified, *i.e.*, he must have had the right to rely. *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599; *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229.

Plaintiffs argue that their fraudulent misrepresentation counts are sufficient to state a cause of action because they set forth the language of the policies that falsely purport to provide insurance coverage in amounts greater than the statutory limit of liability for personal injury of $15,000. We reiterate that in our consideration of plaintiffs' argument we consider only the pertinent facts alleged in the complaint, which we accept as true in ruling on the motion to dismiss, together with other facts contained in exhibits or other materials incorporated into the complaint. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599.) We make renewed reference to this rule because there are facts in the record before us presented in affidavits and depositions that do not constitute part of the complaint and are not to be considered in testing whether the cause of action is sufficiently alleged, although we deem such additional facts to weigh against plaintiffs' position.

Plaintiffs rely on *Steinberg v. Chicago Medical School* and *Glazewski v. Allstate Insurance Co.* (1984), 126 Ill. App. 3d 401, 466 N.E.2d 1151, to support their argument regarding defendants' fraud-

ulent misrepresentation. In *Steinberg*, a class action case, the supreme court found sufficient to state a cause of action for fraud allegations that defendant, with intent to deceive and defraud, stated in its catalogues that it would use certain criteria to evaluate admission applications, but such statements were false in that applicants were selected primarily for monetary considerations, and that plaintiffs relied on the defendant's representations to their damage. In *Glazewski* the appellate court considered a class action case brought against certain insurance companies for fraud, a violation of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 311 *et seq.*) and a violation of a section of the Illinois Insurance Code that is not involved in this case. The complaint alleged that defendant insurance companies had committed fraud upon policyholders in the sale of both uninsured motorist coverage and underinsured motorist coverage in the minimum amount of coverage provided by statute, $15,000. The fraud was alleged to have occurred when a premium was charged for the underinsured motorist coverage of $15,000 that would be worthless since it would afford no coverage at all in accidents with other Illinois motorists over and above that afforded by the uninsured motorist coverage contained in the same policy. The trial court dismissed the complaint as failing to state a cause of action for fraud, but the appellate court reversed despite the fact that the defendants were required by law to offer the underinsured motorist coverage and despite the further fact that 15 states had minimum liability insurance limits of less than $15,000.

Several factors not found in *Steinberg* and *Glazewski* are present in the case under consideration that serve to distinguish it and require affirmance of the trial court's order of dismissal of the fraud counts. All policies of insurance involved here provided, and plaintiffs' complaint even alleges, that they insure claims arising out of section 14 and 15 of the Dramshop Act "and all laws amendatory thereof." While much argument by the parties is directed at this particular clause of the policies and the fixed (plaintiffs) or flexible (defendants) amount of the statutory $15,000 limitation for personal injury liability, we feel that such policy language does represent some exposure upon the part of the defendants. It is common knowledge in the alcoholic liquor trade that frequent attempts have been made to induce the legislature to increase, or remove altogether, the $15,000 limitation on liability of dramshops for personal injury. In this manner the excessive coverage for personal injury claims cannot be considered false or illusory, although it may be tenuous.

Plaintiffs' emphasis upon the payment of a premium for what

they term "excessive coverage" is, in light of *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539, overemphasized. In that case the plaintiff sought to "stack" the uninsured motorist coverage under three policies of automobile liability insurance. Plaintiff had paid a separate premium for the uninsured motorist coverage in each of the policies. Nevertheless, the supreme court denied the attempt to stack the coverages because of unambiguous policy language that limited uninsured motorist coverage benefits to one policy. In *Menke*, then, as here, plaintiffs had arguably paid for coverage without receiving it, but that fact did not change the result.

The defendants here all had schedules of rates on file with the State Department of Insurance, and they were available for inspection at any time. Those rates showed the personal injury coverage to be available for $15,000 as well as for amounts both above and below $15,000. Any of the plaintiffs, or any member of a class they purport to represent, could purchase personal injury coverage in any amount they chose, either $15,000 or more, or even less, than that amount. There is no indication anywhere that any defendant induced any plaintiff to act by purchasing a policy for personal injury coverage exceeding $15,000. All information regarding available coverage and rates was readily available to plaintiffs as well as the $15,000 personal injury limitation set forth in the statutes, and it was incumbent upon them to make inquiry. As the supreme court. stated in *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 94, 169 N.E.2d 229, 232:

> "The rule is well established that a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge; and if he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations."

Also see *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 599; *Robacki v. Allstate Insurance Co.* (1984), 127 Ill. App. 3d 294, 468 N.E.2d 1251; *Kusiciel v. La Salle National Bank* (1982), 106 Ill. App. 3d 333, 435 N.E.2d 1217.

■ In conclusion on the fraud counts of the complaint, we find that the complaint was insufficient to allege that false representations were implicitly or impliedly made by defendants in the sale of policies affording coverage for personal injury in excess of $15,000, and that there was no inducement to plaintiffs to place reliance upon any false representation. The *Steinberg* case is easily distinguishable because

the false representation there was squarely contrary to the actual facts regarding criteria for admissions. No such blatant contradiction and falsity is present in this case. Likewise, *Glazewski* is distinguishable because in that case defendant insurers marketed underinsured motorist coverage which simply duplicated existing coverage found in the uninsured motorist portion of the insurance policies and was therefore worthless. As we have stated, the excess coverage here was not worthless.

For these reasons, we affirm the trial court's order dismissing the fraud counts of plaintiffs' complaint.

Eight counts of plaintiffs' complaint assert a cause of action asking for restitution for the premiums paid for excessive coverage beyond the $15,000 limitation where the defendants were exposed to no liability. These counts sound in contract and are grounded upon the alleged partial failure of consideration that resulted from the sale of liability coverage for which there was no exposure because of the statutory limitation. Neither fraudulent misrepresentation or deceit are a part of these counts of the complaint.

What we have said with regard to the unjust enrichment and the fraud counts largely governs our disposition of the counts charging partial failure of consideration and likewise requires affirmance of the trial court in their dismissal. The policies afforded coverage for liability arising out of sections 14 and 15 of the Dramshop Act "and all laws amendatory thereof." The possibility that the legislature might amend the personal injury liability limits alone is sufficient consideration for the premium collected for coverage beyond $15,000. (*Sta-Ru Corp. v. Mahin* (1976), 64 Ill. 2d 330, 356 N.E.2d 67; 1 Corbin, Contracts sec. 217, at 540 (1963): "that which is bargained for by the promisor and given in exchange for the promise by the promisee is not made insufficient as a consideration by the fact that its value in the market is not equal to that which is promised.") Thus, there was some exposure, however tenuous. The promise of defendants to furnish coverage beyond the present statutory limitation is not an illusory one. It is sufficient, in any event, to prevent a finding that the sale of the excess coverage was void for failure of consideration. As we have previously observed, the rates and coverages made available by defendants were on file with the State Department of Insurance for all to see; the limitation of liability for personal injury was set forth in the statute and was a fact presumably well known in the liquor trade. Plaintiffs could have purchased any amount of coverage for personal injury liability, equal to, above or below the amount provided in the statute.

As we have noted, the possibility has always existed that the legislature could increase or remove altogether the $15,000 limit on personal injury liability. In his treatise on the law of contracts, Professor Corbin states:

"A promise is not made insufficient as a consideration for a return promise by the fact that it is conditional, even though the condition is one that is purely fortuitous and may never happen at all.

\* \* \*

If a seeming promise is made conditional upon an event that can not occur at all, as the promisor knows, no real promise has been made. This is one form of the so-called 'illusory promise'; it is not a sufficient consideration for another promise. If, on the other hand, the promise is conditional upon an event that may possibly occur, it is not illusory; and it is not made an insufficient consideration by the fact that the probability that the event will occur is very slight." (1 Corbin, contracts sec. 148, at 645-51 (1963).)

Also see Restatement (Second) of Contracts sec. 76 (1981), and comments b and c thereto.

For the foregoing reasons the trial court was correct in dismissing those counts of the complaint that alleged failure of consideration.

Eight counts of plaintiffs' complaint allege causes of action based upon section 2 of the Consumer Fraud and Deceptive Business Practice Act (Ill. Rev. Stat. 1983, ch. 121½, par. 262) (Consumer Fraud Act). As to these counts, the pertinent portions of plaintiffs' complaint allege that "the selling of policies and the acceptance of premiums for excessive coverage without assuming any insurable risk beyond the statutory limit constitutes fraud, deception, false pretense, false promise and misrepresentation" and that "in selling the aforesaid policies and accepting premiums for excessive coverage without assuming any insurable risk beyond the statutory limit, the defendant did not in its policy disclose the statutory limit of liability, thereby concealing, suppressing or omitting a material fact that the plaintiff and plaintiff's class rely upon said concealment, suppression or omission in violation of [section 2]."

Section 2 of the Consumer Fraud Act provides:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the conceal-

ment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person had in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." Ill. Rev. Stat. 1983, ch. 121½, par. 262.

In *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 288, 430 N.E.2d 1012, 1017, the supreme court discussed the purpose of the Consumer Fraud Act:

"The Act is a regulatory and remedial enactment intended to curb a variety of fraudulent abuses and to provide a remedy to individuals injured by them. Its stated purpose, set forth in its preamble, is to protect Illinois consumers, borrowers, and businessmen against fraud, unfair methods of competition, and other unfair and deceptive business practices. The Act is clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils."

Plaintiffs rely on the case of *Glazewski v. Allstate Insurance Co.*, as controlling the disposition of their counts based upon the Consumer Fraud Act. (See also *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 438 N.E.2d 924; *Fox v. Industrial Casualty Insurance Co.* (1981), 98 Ill. App. 3d 543, 424 N.E.2d 839; *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040; and *Browder v. Hanley Dawson Cadillac Co.* (1978), 62 Ill. App. 3d 623, 379 N.E.2d 1206.) They argue in their reply brief that

"[t]he only reasonable view of the intent of the Insurers in selling excessive coverage is to induce policyholders to buy it in reliance on the Insurers, despite whatever knowledge of the law they may have. The purpose of the Act is to prevent deceptive statements and omissions so that consumers like the plaintiff policyholders will not throw their money away on services that are illusory. The effect of proper enforcement of the Act will be to enable consumers to rely on Insurers not to sell coverage which is only illusory. That is the plain result of *Glazewski*."

In the *Glazewski* case, as we have said, the plaintiff alleged that the defendant insurance companies marketed underinsured motorist coverage that simply duplicated existing coverage afforded by uninsured

motorist coverage and was therefore worthless.

The same panel of the appellate court that decided the *Glazewski* case also considered the case of *Robacki v. Allstate Insurance Co.* (1984), 127 Ill. App. 3d 294, 468 N.E.2d 1251, and filed an opinion just two months after that in *Glazewski* was filed. The plaintiff in *Robacki* brought an action in which he alleged a violation of the Consumer Fraud Act when the defendant insurance company induced him to replace certain coverages in his insurance policy with new and different coverages. He asserted that deceptive and misleading statements were made in letters from defendant enclosing an explanatory pamphlet and a brochure that detailed the new coverages that would replace the old. The court found that there had been no violation of the act and that no misrepresentation or deception had occurred. It saw no representation by the defendant that the new coverage was identical to or even the same as the previous coverage offered, although defendant had represented in its letters that the new coverage was "similar" to the old. In the opinion in *Robacki* the court considered its opinion in *Glazewski* and distinguished it on the ground that the underinsured motorist coverage involved there was duplicative of other coverage and therefore worthless. The "new" coverage offered in *Robacki*, to the contrary, was valuable and did not constitute the "phantom" coverage rejected by *Glazewski*. The result in *Robacki* was reached in the face of plaintiff's contention that because of the misrepresentations of defendant he was deceived into taking less coverage than that afforded by his previous policy. The *Robacki* court simply found that no misrepresentation had taken place.

We find the facts we may properly consider align this case with *Robacki* rather than with *Glazewski*. The defendants made no overt misrepresentations to plaintiffs to induce them to purchase personal liability coverage in any amount. Any misrepresentation or deception would have to be inferred from the sole fact that policies were issued furnishing coverage in excess of the present statutory limitation and premiums collected therefor. Yet, the defendants would be liable for the amount of coverage for which they had contracted, for, as we have seen, their policies expressly provided that they insured against liability arising out of the Dramshop Act "and all laws amendatory thereof." thus, the coverage was not false or "phantom" merely because there was no present exposure. The possibility of an increase in the amount of personal injury liability was always present. It must be granted that the defendants' exposure beyond the $15,000 limitation was, as we have said, tenuous, but it was not unreal. The situation is not as extreme as that in *Menke v. Country Mutual Insurance*

*Co.*, where, although plaintiff had paid three separate premiums under three separate policies of insurance, he was denied the right to "stack" the coverages and was instead limited to a recovery under one policy. Coupled with this is the fact that at all times the statutes contained the $15,000 limit for personal injury liability and that fact was readily available to any and all in the trade. The defendants could hardly be accused of concealing that which was spread abroad in the statute. The defendants withheld nothing, and their rates and coverages were on file at all times. Dramshop keepers and their landlords could purchase no insurance at all, or they could purchase personal liability coverage in amounts less than, equal to or in excess of the amount specified in the statute as the maximum of liability.

For these reasons we affirm the trial court's dismissal of those counts of plaintiffs' complaint charging defendants with a violation of the Consumer Fraud Act.

In view of the result we have reached with regard to those counts of the complaint seeking to impose a constructive trust, alleging fraud, failure of consideration and a violation of the Consumer Fraud Act, we have no occasion to address plaintiffs' issues regarding injunction, interest, punitive damages, costs and attorney fees.

Although our determination that the plaintiffs' complaint does not state a cause of action would normally conclude our review of the case, we will extend our decision briefly to note our consideration of the aspect of the case dealing with the plaintiffs' contention that the trial court erred in refusing to certify the class.

Section 2—801 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—801) sets forth the four prerequisites for the maintenance of a class action. In its judgment the trial court disposed of the plaintiffs' request for certification as a class action. The court found the first element, numerosity, to be present but concluded that the final three of the requisite elements were not present and denied certification.

It is the rule in Illinois that the proponent of a class action has the burden of establishing the requisites of section 2—801. (*Wheatley v. Board of Education* (1984), 99 Ill. 2d 481, 459 N.E.2d 1364.) The determination of whether the section 2—801 requisites for a class action have been met is a matter that rests within the sound discretion of the trial court and will not be disturbed absent a clear abuse of that discretion. (*Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 459 N.E.2d 1038; *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 425 N.E.2d 1174.) In *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565, the supreme court reversed an appellate

court decision on the issue of discretion because it found that the appellate court had misapprehended its role of review of the trial court's exercise of discretion with regard to the section 2—801 factors and had instead assessed the facts relating to class certification and reached a different conclusion than the trial court. With these cases in mind, our review is limited to a consideration of whether the trial court committed an abuse of its discretion in refusing class certification.

In considering whether class certification was properly withheld, we may refer to any matters of fact or law properly presented by the record, including the pleadings, depositions, affidavits, answers to interrogatories and any evidence that may have been adduced at hearings. In this respect the factual matters available are considerably greater than those available for review of the sufficiency of the complaint to state a cause of action, a matter we have already discussed, Thus, we may now consider that plaintiffs dealt with insurance brokers, not company agents, to obtain their dramshop policies, that some of the plaintiffs purchased dramshop policies with prior knowledge that the statutory limit of liability for personal injury was $15,000, that some of the class of plaintiffs operated from premises under leases that expressly provided and required the dramshop operator to carry personal liability insurance in amounts that exceeded the $15,000 statutory limitation, and that some of the alleged plaintiff-class received the advice and recommendation of brokers or agents and purchased policy limits according to their own particular needs.

It has been stated by Illinois courts that it is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual class members. (*McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565; *Steinberg v. chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634; *O-Kay Shoes, Inc. v. Rosewell* (1984), 129 Ill. App. 3d 405, 472 N.E.2d 883.) Nevertheless, where the section 2—801 factors are not present, class certification is denied. *Magro v. Continental Toyota, Inc.* (1977), 67 Ill. 2d 157, 365 N.E.2d 328; *Owens-Illinois, Inc. v. Bowling* (1981), 99 Ill. App. 3d 1117, 429 N.E.2d 172.

In this case we can find no breach of discretion upon the part of the trial court in finding that the final three section 2—801 requisites had not been met. It appears that some of the plaintiffs' class knowingly purchased excess coverage and that some purchased excess coverage because they were required to do so by third parties. It further

appears that the plaintiffs and the class they represent purchased their policies through independent insurance brokers, and differing factual basis of each separate purchase would have to be inquired into in order to establish the motives and particulars concerning policy limits desired and actually purchased. Thus, common questions do not predominate, and no effective savings in court time could be effected by a class action. We accordingly affirm the order of the trial court that denied class certification.

Affirmed.

WELCH and HARRISON, JJ., concur.