CORONET INSURANCE COMPANY, Plaintiff-Appellee, v. JAMES W. SCHACHT, as Acting Director of Insurance, Defendant-Appellant.

First District (1st Division)    No. 1—92—2602

Opinion filed May 31, 1994.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Alison E. O'Hara, Assistant Attorney General, of counsel), for appellant.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker and Timothy M. Kelly, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Coronet Insurance Company (Coronet) sought, in the circuit court of Cook County, administrative review of an order finding it in violation of section 521 of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1989, ch. 73, par. 1065.68). The circuit court reversed the order, and the defendant, James W. Schacht, the Acting Director of Insurance of the State of Illinois (Director), appeals. We affirm.

In 1990, Money Payment Plan (MPP), a finance company, filed a complaint with the Director charging that Coronet had failed to remit payments MPP claimed Coronet owed it. The payments were promised pursuant to insurance premium finance agreements or

contracts between Coronet's insureds and MPP. In essence, MPP financed the purchase of Coronet's coverage for potential insureds who could not otherwise afford it. MPP would send payment coupon booklets to the potential insureds, who made payments directly to MPP. MPP notified Coronet, which then issued policies directly to insureds. Under the arrangement, the insureds assigned to MPP a power of attorney to cancel the policy upon payment default, in which case MPP was entitled to any unearned premiums. Such cancellation had to be formally communicated to Coronet by an "original debt letter."

The contracts for which MPP claimed payment was owed were never presented as evidence. Neither the testimony of Robert Hymen, the president of MPP, nor that of Peter A. Bergman, the president of Coronet, was sufficient to otherwise supply details of their provisions. Hymen even admitted at one point that he could not identify the names and numbers of the policies. Bergman's testimony was only a bit more helpful. A portion of it pertained to handwritten column entries contained on a single sheet of paper, later introduced into evidence, which ostensibly related to the policies at issue. The entries were under column headings for policy numbers, named insureds, and dates on which the policies were requested and cancelled. However, the sheet of paper is otherwise unenlightening as to any specific provision of the agreements.

We note that the Director also presented two rebuttal witnesses who testified as to an industry practice of how unearned premiums normally would be remitted upon cancellation.

The order of the Director finding Coronet owed MPP unearned premiums was based on the finding that the evidence showed Coronet had violated section 521 of the Code. (Ill. Rev. Stat. 1989, ch. 73, par. 1065.68.) That order was reversed in the circuit court after Coronet successfully argued that MPP failed to offer any proof that a written finance agreement containing a power of attorney existed in the case. Such proof, Coronet convinced the court, was necessary to establish a violation of section 521.

■ On review, an administrative agency's findings of fact are normally considered *prima facie* true and correct. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) Our consideration on review is whether the findings are against the manifest weight of the evidence. (*Launius v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 603 N.E.2d 477, *cert. denied* (1993), 508 U.S. 908, 124 L. Ed. 2d 248, 113 S. Ct. 2337.) We accord no deference to legal conclusions or statutory construction made by the agency. *Worth v. Board of Trustees* (1992), 230 Ill. App. 3d 349, 595 N.E.2d 51, *appeal denied* (1992), 146 Ill. 2d 654, 602 N.E.2d 479.

■ Section 521 of the Code, the section under which the Director found Coronet was owing to MPP, is effectuated "[w]hen a premium finance agreement contains a power of attorney." (Ill. Rev. Stat. 1989, ch. 73, par. 1065.68.) The section permits cancellation of insurance contracts "listed in the agreement" by premium finance companies. True enough, if a contract is so cancelled, the insurer, Coronet here, would be obligated, under a remittance procedure contained in the section, to return to the premium finance company, MPP here, any "gross unearned premiums" due. Ill. Rev. Stat. 1989, ch. 73, par. 1065.68.

But section 521 is of no consequence when a premium finance contract does not contain a power of attorney. Indeed, the Code does not require all such contracts to contain a power of attorney. Section 519 of the Code requires only that premium finance contracts contain information about premium amounts, costs, and payment due dates. See Ill. Rev. Stat. 1989, ch. 73, par. 1065.66.

■ The plain and ordinary language (see *Maloney v. Bower* (1986), 113 Ill. 2d 473, 498 N.E.2d 1102; see also *People v. Singleton* (1984), 103 Ill. 2d 339, 345, 469 N.E.2d 200) of section 521 precludes MPP's recovery here given the nature of the evidence presented. The agreements at issue were never before the hearing officer for consideration. No evidence of their provisions was otherwise established through oral testimony. The Director simply did not establish that MPP was entitled to the unearned premiums under section 521 as was necessary in commencing the proceedings on MPP's behalf.

There was evidence that the policies were, in fact, cancelled and unearned premiums credited to a third party, Illinois Mandatory Automobile Insurance. That evidence does not, however, establish the existence of the required power of attorney to invite application of section 521.

In a somewhat related argument, the Director contends MPP, the nonmoving party, improperly was saddled with the burden of proof. (See *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 416 N.E.2d 1082 (holding that the moving party has the burden in cases in administrative review proceedings).) It was not. The circuit court judge merely noted at one point that the Director's chief witness, Hymen, did not testify as to the contents of the premium finance agreements in issue.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.