ALLIANCE ACCEPTANCE COMPANY *et al.*, Plaintiffs-Appellants, v. YALE INSURANCE AGENCY, INC., *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—92—3961

Opinion filed March 24, 1995.—Rehearing denied May 1, 1995.

Edward Slovick and James S. Gordon, both of Chicago, for appellants.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

The plaintiffs instituted the instant action pleading several theories of recovery. The counts of plaintiffs' complaint, which are the subject of the instant appeal are those seeking declaratory judgment (count I) and accounting (count III) and alleging breach of contract (count VI) and unjust enrichment (count VII). Counts I, III and VI were directed by Alliance Acceptance Company (Alliance Acceptance) against all defendants (hereinafter referred to collectively as defendants) except Yale Insurance Agency, Inc.; and count VII was directed by Alliance Acceptance and Alliance General Insurance Company (Alliance General) against all defendants. The trial court entered judgment on the pleadings for the defendants on counts I and III and later entered summary judgment in favor of the same defendants on counts VI and VII.[1] Pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), the plaintiffs appeal from these orders and from the trial court's denial of the plaintiffs' cross-motion for summary judgment on counts VI and VII.

Plaintiff Alliance Acceptance is an insurance premium finance company that financed premiums due the defendant insurers from their insureds under nonstandard automobile liability and physical damage policies. A premium finance company advances the loan portion of the insurance premium to the insured's agent, who submits the premium to the insurance company issuing the policy. The premium finance company then collects monthly installment payments from the insured in an amount equal to the premium loan principal plus interest. See Ill. Rev. Stat. 1991, ch. 73, par. 1065.61(2) now 215 ILCS 5/513a2(c) (West 1992)).

Plaintiff Alliance General issued nonstandard automobile liability insurance policies; and the defendants, excluding Horizon Insurance Agency and National Underwriters-Illinois Agency, Inc., is-

---

[1]Yale Insurance Agency, Inc. (Yale), was not a party to the motions to dismiss or to the summary judgment motions filed by the remaining defendants and is not a party to the instant appeal. Yale is not included in the collective term defendants and will be referred to by name in the text of this opinion.

sued nonstandard automobile physical damage insurance policies. The latter two defendants wrote and issued nonstandard automobile physical damage insurance policies as agents of the Defendant insurance companies and other undisclosed insurers.

Plaintiffs' complaint alleged that Alliance Acceptance financed premiums for numerous nonstandard insurance policies issued by the defendants and by Alliance General which Yale sold to its insured customers. After certain insureds failed to make their monthly installment payments, Alliance Acceptance notified the defendants of the nonpayment and requested that they cancel their applicable policies. According to the plaintiffs' complaint, the defendants did cancel the policies but refused, upon Alliance Acceptance's request, to refund the unearned premiums to Alliance Acceptance. (The plaintiffs alleged that the defendants credited the amount of unearned premiums to Yale's account and that Yale also has refused to return the unearned premiums to Alliance Acceptance.) It is the defendants' refusal to issue refunds to Alliance Acceptance that is the basis for the relief sought in counts I, III, VI and VII of the plaintiffs' complaint and which is the subject of the instant appeal.

At issue are the defendants' motions to dismiss the declaratory judgment (count I) and accounting counts (count II); the plaintiffs' motion for summary judgment on all four counts (counts I, II, VI and VII); and the defendants' cross-motions for summary judgment on the breach of contract count (count VI) and the unjust enrichment count (count VII). The trial court granted defendants' motions to dismiss the declaratory judgment and accounting counts as well as the defendants' motions for summary judgment on the breach of contract count based on the failure of Alliance Acceptance to establish a valid written premium finance agreement between that plaintiff and the insureds as required by section 521 of the Insurance Code (Ill. Rev. Stat. 1991, ch. 73, par. 1065.68). Summary judgment also was granted to the defendants with respect to the breach of contract count because the court found that Alliance Acceptance's cancellation requests were not in compliance with section 521 of the Insurance Code and because those cancellation requests could not form the basis of enforceable contracts between Alliance Acceptance and the defendants. The trial court granted the defendants' motions for summary judgment on the unjust enrichment count because the plaintiffs violated the Illinois Insurance Code by failing to establish the existence of a premium finance agreement and that this violation of State law barred recovery.

On appeal, the plaintiffs argue that the trial court erred in construing section 521 of the Insurance Code to require a written

premium finance agreement and that the trial court erred in granting summary judgment to the defendants and denying summary judgment to the plaintiffs on the breach of contract and unjust enrichment claims based solely on the absence of a written premium finance agreement. The plaintiffs also contend that the trial court should have imposed liability upon defendants Horizon Insurance Agency and National Underwriters-Illinois Agency, Inc., as agents for undisclosed principals.

■ In accordance with the Illinois Insurance Code and the provisions therein governing premium finance companies (Ill. Rev. Stat. 1991, ch. 73, par. 1065.60 *et seq.* (now 215 ILCS 5/513a1 *et seq.* (West 1992))), a premium finance agreement shall be dated and signed by or on behalf of the insured and must set forth several monetary items not here relevant (Ill. Rev. Stat. 1991, ch. 73, par. 1065.66). Section 521 of the Insurance Code provides for the method of cancellation of the underlying insurance policy by the premium finance company and states in relevant part:

> "When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless such cancellation is effectuated in accordance with this Section.
>
> * * *
>
> (4) Whenever a financed insurance contract is cancelled, the insurer shall return whatever gross unearned premiums are due under the insurance contract to the premium finance company effecting the cancellation for the account of the insured * * *." Ill. Rev. Stat. 1991, ch. 37, par. 1065.68.[2]

The provisions of section 521 of the Insurance Code were recently considered by this court in *Coronet Insurance Co. v. Schacht* (1994), 264 Ill. App. 3d 359, 636 N.E.2d 895.[3] In that case, the premium finance company, Money Payment Plan, filed a complaint with the

---

[2]The statutory provisions relative to premium finance companies and applicable in the case at bar were repealed and replaced with amended provisions effective July 1, 1992. (See Ill. Rev. Stat. 1991, ch. 73, par. 1065.60a1 *et seq.* (now 215 ILCS 5/513a1 *et seq.* (West 1992)).) In addition to the enumerated monetary items, the new statute requires the premium finance company to furnish full and complete disclosure of the terms and conditions of the premium finance agreement to the named insured. Ill. Rev. Stat. 1991, ch. 73, par. 1065.60a9(b) (now 215 ILCS 5/513a9(b) (West 1992)).

[3]While *Coronet Insurance Co. v. Schacht* (1994), 264 Ill. App. 3d 359, 636 N.E.2d 895, was decided after the parties filed their briefs in the instant case,

Director of Insurance charging that Coronet had violated section 521 of the Insurance Code by failing to remit to Money Payment Plan the unearned premiums on policies Coronet had issued to insureds who defaulted on their payments to Money Payment Plan required by premium finance agreements between the insureds and Money Payment Plan. The Director of Insurance found that Coronet had violated section 521 but was reversed by the circuit court on administrative review. The circuit court found that Money Payment Plan had failed to offer any proof of a written finance agreement containing a power of attorney. The appellate court affirmed.

While noting that section 521 of the Insurance Code would have required the return of the unearned premiums " '[w]hen a premium finance agreement contains a power of attorney' " (264 Ill. App. 3d at 362, 636 N.E.2d at 896, quoting Ill. Rev. Stat. 1989, ch. 73, par. 1065.68), the appellate court further stated:

"The plain and ordinary language [citations] of section 521 precludes [Money Payment Plan]'s recovery here given the nature of the evidence presented. The agreements at issue were never before the hearing officer for consideration. No evidence of their provisions was otherwise established through oral testimony." 264 Ill. App. 3d at 362, 636 N.E.2d at 896-97.

█ It is undisputed in the case at bar that Alliance Acceptance does not have a written premium finance agreement with the defendants' insureds. So, too, Alliance Acceptance does not have a power of attorney that would enable it to request cancellation of the insurance contracts issued by the defendants to the insureds. Thus, in accordance with *Coronet Insurance Co.*, section 521 of the Insurance Code is inoperable, and Alliance Acceptance is without authority to seek the cancellation of the insurance policies issued by the defendants or to seek the return of any unearned premiums that would have accrued as a result of the cancellation and pursuant to section 521(4) of the Insurance Code. Accord *Britten v. Reavis* (La. Ct. App. 1987), 503 So. 2d 1149 (mandatory statutory procedure for cancellation cannot be effectuated by premium financier without power of attorney provision in premium finance agreement). See also *Piedmont Premium Service, Inc. v. South Carolina Insurance Co.* (1981), 277 S.C. 99, 101, 283 S.E.2d 828, 829 (at common law "a party lacking a contractual relation or privity with an insurer cannot recover premiums that are paid as a loan to the insured even where

reference to that case was made by the parties at oral argument. Furthermore, as the plaintiffs note in their brief, the trial court in the case at bar relied upon the lower court decision in *Coronet Insurance Co.*, which it had entered, when ruling on the instant case.

payment is made directly to the insurer's agent"; compliance with statute is required in order for premium finance company to seek cancellation of insurance policy and recover unearned premium directly from insurer upon insured's default in repayment of premium loan).

Alliance Acceptance argues that *Coronet Insurance Co.* is not controlling in the case at bar because it was premised on an interpretation of section 521 of the Insurance Code whereas that statutory provision is not relied upon herein as a basis for recovery. Alliance Acceptance further argues that *Coronet Insurance Co.* is distinguishable because the issue in *Coronet* was whether section 521 of the Insurance Code required a power of attorney clause in the premium finance agreement whereas the issue here is whether a written premium finance agreement, with or without a power of attorney, is required in order for plaintiffs to establish their rights of recovery.

Plaintiffs' first distinction is not only incorrect but is clearly contradicted by the record. The provisions of section 521 of the Insurance Code are of significant import to the instant case as that section governs procedures for cancellation of an insurance contract when the insured is in default of his or her monthly installment payments under a premium finance agreement. Without such a provision, we fail to see how Alliance Acceptance or any premium finance company would have standing to seek the cancellation of an insurance contract to which it is not a party. See *Piedmont Premium Service, Inc. v. South Carolina Insurance Co.*, 277 S.C. 99, 283 S.E.2d 828. See also *National Automobile Underwriters Association v. Day* (1952), 348 Ill. App. 554, 109 N.E.2d 630; *People ex rel. Barber v. Hargreaves* (1940), 303 Ill. App. 387, 25 N.E.2d 416 (legislature has power to regulate, control and supervise insurance industry, a business that affects the public interest, subject only to constitutional limits).

We further note that Alliance Acceptance's accounting count specifically cited to section 521 of the Insurance Code as a basis for recovery and that count as well as the declaratory judgment count were supported by exhibits which referred to the premium finance company provisions of the Illinois Insurance Code. One such exhibit, a copy of the cancellation request sent by Alliance Acceptance to the defendants, referred to article XXXII of the Illinois Insurance Code as the basis for the cancellation request. (Article XXXII contains the provisions governing premium finance companies and includes therein section 521.) A second exhibit to the plaintiffs' complaint included copies of letters sent by Alliance Acceptance to the defendants requesting payment of the unearned premiums "in accordance with Illinois Insurance Code Section 521." Furthermore, as

part of the relief sought in the declaratory judgment count of the complaint, Alliance Acceptance asked the court to declare the rights and liabilities of the parties under the terms and provisions of the cancellation request and the letters sent to the defendants. Finally, plaintiffs' brief submitted on appeal argues that "subsection (4) [of section 521 of the Insurance Code] unequivocally imposes an unconditional obligation on an insurance company to return the unearned portion of the premium to the premium finance company effecting the cancellation." Clearly, Alliance Acceptance had relied on the Illinois Insurance Code and, more specifically, section 521 of that Code as a basis for relief in the declaratory judgment and accounting counts of its complaint thereby making *Coronet Insurance Co.* relevant to the disposition of those counts.

We turn next to plaintiffs' second distinction of the instant case from *Coronet Insurance Co. v. Schacht*. Alliance Acceptance argues that the instant case does not turn on the existence or nonexistence of a power of attorney clause, as it did in *Coronet*, but rather on whether a written premium finance agreement is required. Alliance Acceptance contends that not only is a power of attorney clause unnecessary but that a written premium finance agreement is unnecessary in order for it to recover.

We disagree. Section 519 of the Insurance Code regulates the form of premium finance agreements; and, while not specifically stating that those agreements must be in writing, such a requirement is implied from the statutory language that the "premium finance agreement *shall* be dated and *signed* by or on behalf of the insured and the *printed* portion thereof shall be in at least *eight-point type*." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 73, par. 1065.66(1).) Section 519 further provides that a "person acting on behalf of the premium finance company is required to furnish a *completed copy* of the premium finance agreement to the insured." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 73, par. 1065.66(2).) Clearly, in order for an agreement to be signed, printed in eight-point type, and furnished to the insured, it must be in writing. Moreover, *Coronet Insurance Co.* supports such a conclusion because that court affirmed the trial court's reversal of the administrative decision based on a finding that the premium finance company had "failed to offer any proof that a written finance agreement containing a power of attorney existed." (264 Ill. App. 3d at 361, 636 N.E.2d at 464.) The appellate court agreed, finding that the "agreements at issue were never before the hearing officer for consideration. No evidence of their provisions was otherwise established through oral testimony." 264 Ill. App. 3d at 362, 636 N.E.2d at 897.

Regardless of whether the Insurance Code requires a written premium finance agreement, we agree with Alliance Acceptance's argument that neither the Insurance Code nor *Coronet Insurance Co.* requires that the premium finance agreement contain a power of attorney provision. (See Ill. Rev. Stat. 1991, ch. 73, pars. 1065.66, 1065.68 ("*[w]hen* a premium finance agreement contains a power of attorney" (emphasis added)).) We disagree with Alliance Acceptance's conclusion, however, that the absence of such a provision does not affect a premium finance company's rights to seek cancellation of the insurance policy and the return of unearned premiums.

It would appear that the absence of a power of attorney provision would not negate the existing terms of a premium finance agreement or affect the rights of the parties to that agreement; and in the event of default, the premium finance company would have contractual rights *vis-a-vis* the insured/borrower. However, as *Coronet* holds, without the power of attorney provision in the premium finance agreement, the premium finance company has no standing or authority under the Insurance Code to effectuate the cancellation of the insurance policy or the return of the resultant unearned premiums. (Accord *Britten v. Reavis* (La. Ct. App. 1989), 503 So. 2d 1149; *Piedmont Premium Service, Inc. v. South Carolina Insurance Co.* (1981), 277 S.C. 99, 283 S.E.2d 828.) Thus, since there was no dispute as to the absence of a power of attorney provision within a premium finance agreement between Alliance Acceptance and the insureds, it is also true, as a matter of law, that Alliance Acceptance had no right to proceed against the defendants by way of its declaratory judgment or accounting counts; and the trial court properly granted the dismissal of those counts of the plaintiffs' complaint pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)).

■ Alliance Acceptance next argues that the trial court erred in granting the defendants' motions for summary judgment on the breach of contract count based on the absence of a written premium finance agreement. The plaintiff contends that such an agreement is not statutorily required in order for it to avail itself of the cancellation remedy. The plaintiff further contends that the actual cancellation of the policies by the defendants pursuant to Alliance Acceptance's requests created contractual relationships between them and corresponding obligations on defendants to remit the unearned premiums to Alliance Acceptance.

As stated above, we believe the Insurance Code requires a written premium finance agreement between the premium finance company and the insured/debtor. As also stated above, the control-

ling issue here is not whether a written premium finance agreement is required but whether a premium finance company must possess a power of attorney executed by the insured/debtor enabling it to cancel the insurance policy issued to that insured before the premium finance company can request cancellation of that insurance policy by the insurer. Without a power of attorney, the premium finance company has no right or authority to seek cancellation of the insurance policy and the insurer has no right or obligation to cancel that policy. See *Coronet Insurance Co.*, 264 Ill. App. 3d 359, 636 N.E.2d 895; *Britten*, 503 So. 2d 1149; *Piedmont Premium Service, Inc.*, 277 S.C. 99, 283 S.E.2d 828.

■ We also reject Alliance Acceptance's contention that the defendants' actual cancellations of the insurance policies somehow created a contractual obligation upon them to refund the unearned premiums to the plaintiff. While we strongly question the correctness of such a conclusion, we need not discuss it further as the plaintiff has apparently, and not surprisingly, been unable to find or cite any authority for such a proposition. *Bank of Illinois v. Thweatt* (1994), 258 Ill. App. 3d 349, 630 N.E.2d 121; *In re Marriage of Winton* (1991), 216 Ill. App. 3d 1084, 576 N.E.2d 856.

■ The plaintiffs next contend that the trial court improperly granted summary judgment on their unjust enrichment count. In support of this argument, the plaintiffs cite but one case, *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill. 2d 145, 545 N.E.2d 672. As stated in *HPI Health Care*:

> "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. [Citations.]" 131 Ill. 2d at 160, 545 N.E.2d at 26.

As noted in *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1985), 137 Ill. App. 3d 84, 484 N.E.2d 349:

> "The term 'unjust enrichment' is not descriptive of conduct that, standing alone, will justify an action for recovery. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, and may be redressed by a cause of action based upon that improper conduct." (137 Ill. App. 3d at 90-91, 484 N.E.2d at 354.)

In the instant case, the plaintiffs have failed to allege any wrongful conduct directed at them by the defendants that would enable them to recover. It is true that after the defendants cancelled the insurance policies, pursuant to Alliance Acceptance's requests, they

refused to return the unearned premiums to Alliance Acceptance. However, for the reasons noted above, Alliance Acceptance's requests and the defendants' subsequent cancellations were made in violation of section 521 of the Insurance Code. It is clear that without the statutory authorization allowing a premium finance company to request cancellation of insurance policies, Alliance Acceptance was merely a creditor of the insureds and, as such, would have no lien or security interest in the unearned premiums. Thus, entitlement to the return of the unearned premiums for wrongful cancellations would inure, if at all, to the insureds since the premiums were paid on their behalf and since they remained liable for the amounts borrowed under the premium finance agreements.[4] Thus, summary judgment in favor of the defendants on the unjust enrichment count (count VII) of the plaintiffs' complaint was proper.

■ Next Alliance Acceptance contends that the doctrines of waiver, estoppel and *jus tertii* bar the defendants from asserting the nonexistence of premium finance agreements where the defendants accepted the plaintiff's partial payment of premiums and did not demand production of premium finance agreements at the time they accepted the premium payments and where the Insurance Code provisions were enacted for the benefit of the insured and not the insurer. With respect to these doctrines, the plaintiff has cited one case on waiver and estoppel (*Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 373 N.E.2d 492) and one case on *jus tertii* (*Illinois Municipal League v. Illinois State Labor Relations Board* (1986), 140 Ill. App. 3d 592) for the general principles involved therein. Neither of these cases is persuasive to the issues presented here.

As generally explained in *Tibbs*, a waiver is a voluntary relinquishment of a known right, claim or privilege by the insurer whereas estoppel is implied from the conduct of the insurer which leads the insured to act on a reasonable belief that the insurer has waived some provision of the policy. Based on this case, Alliance Acceptance argues that, to the extent that the Insurance Code affords defendants a right to the production of written premium finance agreements, the defendants have waived this right or are estopped from asserting this right, by accepting the premiums and issuing the insurance policies without first requesting production of the agreements. The doctrines of waiver and estoppel presuppose that the

---

[4]As noted previously, the plaintiffs' complaint in fact alleged that the defendants credited the unearned premiums to their accounts for Yale, the insureds' broker.

party against whom the doctrines are asserted had a right, claim or privilege that it could relinquish. The defendants in the instant case had no such rights, claims or privileges that they could relinquish. Rather, the defendants had statutory obligations to comply with the provisions of the Insurance Code. These statutory obligations arose not at the time the insurance policies were issued but rather at the time that cancellations of the policies were sought. The statutory provisions relative to premium finance agreements did not require the defendants to obtain copies of the premium finance agreements prior to issuing their insurance policies. Rather, the provisions required that the defendants refuse to cancel insurance policies purchased with funds borrowed pursuant to premium finance agreements unless those agreements contained powers of attorney. Thus, the defendants' actions could not and did not fall within the waiver or estoppel doctrines.

■ We also reject plaintiff's *jus tertii* argument that the defendants were impermissibly allowed to assert the rights of their *insureds* with respect to the Insurance Code requirement of a written premium finance agreement. As stated previously, the defendants were not asserting rights that their insureds had *vis-a-vis* the plaintiff. Rather, when the defendants refused to remit unearned premiums to Alliance Acceptance, they were doing so in compliance with their statutory obligation to refuse to cancel insurance policies issued upon the payment of premiums borrowed pursuant to premium finance agreements when those agreements did not contain powers of attorney. Clearly, the assertion of *jus tertii* was improper in the case at bar.

Plaintiffs' final contention on appeal is that the trial court should have imposed liability upon defendants Horizon Insurance Agency and National Underwriters-Illinois Agency, Inc., as agents for undisclosed principals. While plaintiffs' argument is somewhat illusive, we need not reach its merits since, whether these defendants were acting as agents for undisclosed principals, for the reasons stated above, there is no liability on the part of any of the defendants for their failure to remit unearned premiums to Alliance Acceptance.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.