FOURTH DIVISION

NOVEMBER 7, 2002

1-01-1848

VILLAGE OF MCCOOK, a municipal ) Appeal from the

corporation, ) Circuit Court of

) Cook County.

Plaintiff-Appellee, ) 

)

v. ) 

)

ILLINOIS BELL TELEPHONE COMPANY, ) 

d/b/a Ameritech Illinois, ) Honorable

) Thomas P. Durkin,

Defendant-Appellant. ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Illinois Bell Telephone Company, d/b/a Ameritech Illinois, seeks reversal of the circuit court's order denying its motion to dismiss the complaint filed by plaintiff, Village of McCook, a municipal corporation, for lack of standing.  Plaintiff brought suit on behalf of itself and all other Illinois municipalities and other units of government which, during the period of May 1993 through the present, sustained damages by reason of defendant’s failure to collect and remit to plaintiff and the putative class full surcharge amounts allegedly due under the Illinois Emergency Telephone System Act (the Act) (50 ILCS 750/0.01 
et
 
seq
. (West 2000)).  

On June 14, 2001, this court denied defendant's application for leave to appeal the circuit court’s order under Supreme Court Rule 308 (155 Ill. 2d R. 308 (Rule 308)), accompanied by a certified question.  On October 3, 2001, the supreme court denied defendant's petition for leave to appeal, but entered a supervisory order directing this court to "accept this case for a determination as to the certified question."  Leave to appeal pursuant to Rule 308 was granted on November 9, 2001.  The certified question is as follows:

"Whether the Village of McCook is authorized, empowered or has standing under the [Act] to bring an action for enforcement or for a violation of sections 15.3(f) and (g) of the [Act], or whether the [Act] empowers and authorizes only the Attorney General of the State of Illinois to bring such an action.  If McCook is not so authorized, whether the claims McCook asserted are an impermissible attempt to enforce the [Act]."

Emergency communication service 9-1-1 is provided to units of local government by telecommunications carriers, such as defendant, for a fee based upon the number of exchange access lines in the municipality.  In order to pay for 9-1-1 services, the Act authorizes units of local government to impose by ordinance a monthly surcharge on billed subscribers or customers of the telecommunications carrier’s services.  50 ILCS 750/15.3(a) (West 2000).  The surcharge, which is collected by the telecommunications carrier as a separately stated item on the customer’s bill (50 ILCS 750/15.3(f) (West 2000) (section 15.3(f))), and then paid to the municipality, less a 3% commission for the telecommunications carrier (50 ILCS 750/15.3(g) (West 2000) (section 15.3(g))), applies to "in service network connections" located within the municipality (50 ILCS 750/15.3(b) (West 2000)).    

Plaintiff in its first amended  complaint alleged that in 1992, it adopted an ordinance pursuant to section 15.3 of the Act (50 ILCS 750/15.3 (West 2000) (section 15.3)), imposing a monthly surcharge of $.85 per network connection.  In March 1993, defendant began surcharge collection as required by sections 15.3(f) and (g).  On May 25, 1993, plaintiff and defendant entered into a written agreement (the Agreement) pursuant to which defendant agreed to provide plaintiff with 9-1-1 telephone service in exchange for a monthly fee, based on the number of exchange access lines in the municipality.  On June 4, 1993, plaintiff notified defendant that the 9-1-1 surcharge amounts it had collected were below the anticipated revenues based upon the number of exchange access lines, including Centrex and PBX lines, located within plaintiff’s boundaries.
(footnote: 1)  Plaintiff contends that since 1993, defendant has collected 9-1-1 surcharge amounts in a manner inconsistent with the Act's definition of network connection, thereby breaching its contractual and fiduciary duties to plaintiff and the class. Plaintiff maintains that the surcharge revenues collected by defendant were computed using a ratio-based discount that failed to charge subscribers for each individual PBX and Centrex telephone line they possessed.
(footnote: 2)  

Count I of plaintiff’s complaint sought an accounting and a mandatory injunction "directing defendant to begin collecting plaintiff's and the [c]lass's surcharge revenues based upon the total number of plaintiff's and the [c]lass's telephone access lines located respectively within each municipality's boundaries."  Count II stated a claim for breach of contract, alleging that defendant "breached its duties under the contract and simultaneously its duties under the [Act] when it failed to collect and remit full and proper surcharges to plaintiff and the [c]lass in accordance with the [Act's] definition of the term 'network connection.'"  Count III alleged a breach of statutory duty.  Count IV, which claimed a cause of action for breach of fiduciary duty, alleged that defendant "breached its fiduciary duty to plaintiff and the [c]lass by collecting and remitting 9-1-1 surcharge amounts based upon less than half the number of telephone access lines, including Centrex and PBX lines, located within the boundaries of plaintiff and each Class member, respectively."  

On February 5, 2001, the circuit court denied defendant's  section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2000) (section 2-619)), which had sought dismissal of the cause based upon plaintiff's lack of authority or capacity to sue defendant for violations of the Act.
(footnote: 3)  The court stated that it “did not read the Act to confer enforcement authority only with the Attorney General.”  The court further found that plaintiff was seeking damages for breach of contract.

The circuit court certified the question of law concerning standing under the Act following its denial of defendant’s section 2-619 motion to dismiss.  The standard of review on appeal therefore, is 
de
 
novo
.  
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 713 N.E.2d 543 (1999).

I

The first part of the certified question is whether plaintiff has standing under the Act to bring an action for enforcement or a violation of sections 15.3(f) and (g).  Defendant makes several arguments in support of its contention that plaintiff lacks standing to bring such an action.
(footnote: 4) 

First, defendant argues that the provisions of the Act demonstrate the legislature’s intent that only the Attorney General can enforce compliance with the Act.  In interpreting a statute, the court must ascertain and give effect to the intent of the legislature. 
 
Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board
, 165 Ill. 2d 80, 649 N.E.2d 369 (1995).  The language of the statute provides the best evidence of that intent.  
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 561 N.E.2d 656 (1990)
.
  Statutes should be evaluated in their entireties and each provision should be construed in connection with every other section. 
Newland v. Budget Rent-A-Car Systems, Inc.
, 319 Ill. App. 3d 453, 744 N.E.2d 902 (2001).  

Sections 12 and 15.1 of the Act (50 ILCS 750/12, 15.1 (West 2000)), clearly demonstrate the legislature's intent that only the Attorney General would enforce compliance with the Act.  Section 12, the general enforcement provision, provides that “[t]he Attorney General may, in behalf of the Commission or on his own initiative, commence judicial proceedings to enforce compliance by any public agency or public utility providing telephone service with this Act.”  50 ILCS 750/12 (West 2000).  Section 15.1, the governmental immunity provision, expressly states that “[t]his Section may not be offered as a defense in any judicial proceeding brought by the Attorney General under Section 12 to compel compliance with this Act.”  50 ILCS 750/15.1 (West 2000) (section 15.1).  

Pointing to section 15.1, as well as, sections 15.5 and 15.6 of the Act (50 ILCS 750/15.5, 15.6 (West 2000) (section 15.5, 15.6)), plaintiff responds that the Act contemplates private lawsuits.   Section 15.1 provides that no local government or any of its officers, agents, or employees shall be liable for civil damages resulting from any act or omission in connection with operating a 9-1-1 system, except for wilful and wanton misconduct.  Sections 15.5 and 15.6, which require that providers of private or business switch services provide all end-users with 9-1-1 services of uniform quality, expressly prescribe for a private right of action: “[n]othing in this Section shall be construed to preclude the Attorney General on behalf of the Commission or on his or her own initiative, or any other interested person, from seeking relief, by mandamus, injunction, or otherwise, to compel compliance with this Section."  50 ILCS 750/15.5(e), 15.6(e) (West 2000).  

Plaintiff is not suing under sections 15.1, 15.5, or 15.6, but rather under section 15.3 which is silent as to a private right of action.  The 1994 amendment to the Act, which added sections 15.5 and 15.6, demonstrates that when the legislature intended to provide for a private right of action it did so expressly.  See 
Hamilton v. Safeway Insurance Co.
, 104 Ill. App. 3d 353, 432 N.E.2d 996 (1982) (finding that if the legislature had intended to grant a private right of action under section 154-6 of the Insurance Code it would have done so explicitly.)

Defendant relies on 
City of Evanston v. Evanston Fire Fighter’s Ass’n
, 189 Ill. App. 3d 233, 545 N.E.2d 252 (1989) (
Evanston
), 
in which the issue on appeal was whether the city had standing to bring an action for enforcement or for a violation of the Solicitation for Charity Act (225 ILCS 460/0.10 
et
 
seq
. (West 2000) (Solicitation Act)).  In holding that the Solicitation Act conferred the power to enforce its provisions on the Attorney General only, the court noted that the act contained numerous provisions setting forth the Attorney General’s responsibilities, including section 9(a) which stated “an action for violation of this Act may be prosecuted by the Attorney General in the name of the People of the State.”  225 ILCS 460/9(a) (West 2000) (section 9(a)).  The court found that the word “may” in section 9(a) was not intended to convey that other parties were empowered to bring an action for an alleged violation of the Solicitation Act, but was used to allow the Attorney General to exercise his discretion in enforcing the Solicitation Act.  The court noted that if the legislature had intended to confer the Acts enforcement powers on others, it “simply would have said so.”  
Evanston
, 189 Ill. App. 3d at 259.  

Defendant argues that the present case is similar to 
Evanston
.  As in 
Evanston
, the Act contains numerous provisions detailing the Attorney General’s compliance and enforcement role.  See 50 ILCS 750/7, 8, 13, 12, 15, and 15.1 (West 2000).
(footnote: 5)  The Act’s general  enforcement provision is also similar to that found in the Solicitation Act.  See 50 ILCS 750/12 (West 2000).         

Defendant further argues that private enforcement of section 15.3 contravenes Article V, section 15 of the Illinois Constitution, which provides that “[t]he Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law.”  The supreme court construed this provision in 
People ex rel. Scott v. Briceland
, 65 Ill. 2d 485, 500, 359 N.E.2d 149 (1976)
, and found that "t
he Attorney General is the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest, absent a contrary constitutional directive."  See also  
Evanston
, 189 Ill. App. 3d at 249. 

The People of the State of Illinois are the real party in interest here because the Act was intended to benefit the public generally (see 50 ILCS 750/1 (West 2000) (“The General Assembly finds and declares that it is in the public interest to shorten the time required for a citizen to request and receive emergency aid” and “that the establishment of a uniform statewide emergency number is a matter of statewide concern and interest to all inhabitants and citizens of the State”)), and it is the general public that pays the surcharge.  If there is going to be a substantial increase in 9-1-1 surcharges on business phone systems statewide, the Attorney General should be representing the public interest.  At oral argument plaintiff's counsel admitted that the Attorney General could secure all relief requested by plaintiff in this case.  Plaintiff's counsel further admitted that it never asked the Attorney General to file suit in this case.    

Citing 
Barth by Barth v. Board of Education of the City of Chicago
, 141 Ill. App. 3d 266, 490 N.E.2d 77 (1986) (
Barth
)
(footnote: 6) and 
City of Chicago v. Illinois Commerce Comm'n
, 294 Ill. App. 3d 129, 689 N.E.2d 241 (1997) (
City of Chicago
), plaintiff argues  this court previously decided that parties other than the Attorney General may sue under the Act.  Neither case supports plaintiff's contention.  
Barth
 addressed neither the issue of standing under the Act, nor 
involved an alleged violation of the Act.  Rather, 
Barth
 involved a negligence claim in which a child’s mother alleged that her son did not receive medical treatment for one hour after a playground injury from which he later died.  The court found that the city’s 9-1-1 system was an emergency service under the Act and not a police protection service so that section 4-102 of the Tort Immunity Act (745 ILCS 10/4-102 (West 2000)), was inapplicable and the applicable standard of liability was that found in section 15.1 of the Act (50 ILCS 750/15.1 (West 2000)).  Nor did 
City of Chicago
 involve attempts to enforce the Act, but was an administrative appeal of regulations adopted by the Illinois Commerce Commission where jurisdiction and standing existed by virtue of Supreme Court Rule 335(a) (155 Ill. 2d R. 335(a)) and section 10-201(a) of the Public Utilities Act (220 ILCS 5/10-201(a) (West 2000)).
(footnote: 7)
 Plaintiff lacked standing under the Act to bring an action for enforcement or a violation of sections 15.3(f) and (g).  The Act empowers only the Attorney General to bring such an action.    

II

The second part of the certified question is whether plaintiff's claims constitute impermissible attempts to enforce the Act.  According to defendant, plaintiff is attempting to evade the Attorney General's enforcement jurisdiction by asserting a barred statutory violation claim as a breach of contract claim.  Count I seeks a mandatory injunction.  Although termed breach of contract and breach of fiduciary duty,  counts II and IV are premised solely upon alleged statutory violations.  
"Artful pleading" will not disguise plaintiff's endeavors to enforce the Act.  See 
Sundance Homes, Inc. v. County of DuPage
, 195 Ill. 2d 257, 746 N.E.2d 254 (2001).  

Plaintiff insists that it is merely suing to recover damages for defendant’s breach of contract and fiduciary duties and is not seeking to enforce the Act.  According to plaintiff, the statutory duties found in sections 15.3(f) and (g) were incorporated into the Agreement as implied terms.  Plaintiff cites authorities which hold that, in the absence of language to the contrary, the laws and statutes pertinent to a contract and in force at the time the contract is executed are considered a part of that contract as though they were expressly incorporated therein.  
Brandt v. Time Insurance Co.
, 302 Ill. App. 3d 159, 704 N.E.2d 843 (1998)
 (holding that requirement in section 154 of the Insurance Code that a copy of the application be attached to a policy before an insurer could rely on a misrepresentation contained therein to avoid the policy, became an implied term of the insurance policy); 
Lincoln Towers Insurance Agency, Inc. v. Boozell
, 291 Ill. App. 3d 965, 684 N.E.2d 900 (1997) (holding that set off provision in section 206 of the Insurance Code is deemed a part of any contract executed by the insurer and the producers); 
S&D Service, Inc. v. 915-925 W. Schubert Condominium Ass'n
, 132 Ill. App. 3d 1019, 478 N.E.2d 478 (1985)
 (section 18.2 of the Condominium Act was an implied term of plaintiff’s lease with the developer in the absence of contrary language in lease); 
Selcke v. New England Insurance Co.
, 995 F.2d 688 (7th Cir. 1993).

Based on the foregoing cases, plaintiff argues that when defendant entered into the Agreement to provide 9-1-1 service, it was deemed to have accepted every duty imposed by the Act as part of the Agreement, including section 15.3's duty to collect and remit surcharge revenue in a manner consistent with the Act’s definition of network connection.  The cases relied upon by plaintiff do not involve a situation, as here, where the plaintiff alleged a barred statutory violation claim as a breach of contract claim.

In 
Lehmann v. Arnold
, 137 Ill. App. 3d 412, 484 N.E.2d 473 (1985), the court rejected the plaintiffs' attempt to assert a barred statutory violation claim as a breach of contract claim.  Plaintiffs brought a breach of contract action against the bank from which they had borrowed funds to buy their home, after they experienced flooding problems on their property.  Plaintiffs alleged that the bank had failed to comply with the provisions of the National Flood Insurance Act of 1968 (42 U.S.C. sec. 4001 
et
 
seq
. (1982) (Flood Insurance Act)).  The court recognized the general rule that "the law existing at the time and place of the making of a contract is deemed a part of the contract as though expressly referred to or incorporated in it," but affirmed the dismissal of plaintiffs' breach of contract claim after noting that the Flood Insurance Act did not create a federal private cause of action for borrowers.  The court refused to recognize a state cause of action for violation of the Flood Insurance Act. 

Similarly, the instant Act does not provide for a private right of action for enforcement of sections 15.3(f) and (g).  Plaintiff's claims are an impermissible attempt to enforce the Act.

For the reasons stated, the first part of the certified question regarding whether plaintiff "has standing under the [Act] to bring an action for enforcement or for a violation of sections 15.3(f) and (g)," is answered in the negative.  The second part of the certified question regarding whether "the claims [plaintiff] asserted are an impermissible attempt to enforce the [Act]," is answered in the affirmative.  The circuit court erred in denying defendant's motion to dismiss plaintiff's complaint.  Accordingly, the judgment of the circuit court of Cook County is reversed.

Reversed.

GREIMAN and KARNEZIS, JJ., concur.

FOOTNOTES
1:
PBX and Centrex are comparable business telephone systems which provide users with, 
inter
 
alia
, the ability to connect with another phone in the same system by dialing a four digit extension.

2:
In determining the number of exchange access lines and network connections for 9-1-1 purposes, defendant uses a PBX trunk equivalency schedule, pursuant to which a PBX trunk, i.e. the line between the customer’s PBX switch and defendant’s switch, is counted as one exchange access line, and therefore constitutes one network connection for 9-1-1 surcharge purposes.  For Centrex customers, the PBX trunk equivalency schedule converts the total number of lines in use into a corresponding number of PBX trunk equivalents, which in turn, provides the number of exchange access lines and network connections.

3:
The court also denied defendant's motion, brought under section 2-615 of the Code (735 ILCS 5/2-615 (West 2000) (section 2-615)), to dismiss counts I, II, and IV of the amended complaint, but granted its section 2-615 motion to dismiss count III, from which no cross-appeal is taken.

4:
In a motion for leave to file supplemental authority, which this court granted, defendant argues that this appeal is rendered moot by a recent amendment to the Act.
  The Amendment, which is effective January 1, 2003, provides that for PBX systems, one PBX trunk line equals one network connection and for Centrex systems the number of network connections is equal to the PBX trunk equivalents.  Defendant's supplemental authority will not be considered because it requires this court to rule on issues outside the certified question regarding standing.  
McCarthy v. LaSalle National Bank & Trust Co.
, 230 Ill. App. 3d 628, 595 N.E.2d 149 (1992) (review of an appeal under Rule 308 is limited to the question identified by the circuit court.)

5:
Section 7 of the Act (50 ILCS 750/7 (West 2000)), provides that the Commission, "with the advice and assistance of the Attorney General," shall secure compliance with the Act by public agencies within the time frame provided in the Act.  Section 8 of the Act (50 ILCS 750/8 (West 2000)), provides that the Commission, "with the advice and assistance of the Attorney General," shall assist local public agencies with obtaining financial help to establish emergency telephone systems.  Under section 13 of the Act (50 ILCS 750/13 (West 2000)), the Attorney General is required to assist the Commission in submitting budgets to the Governor specifying amounts necessary to further implement the organization of the 9-1-1 systems.  Section 15 of the Act (50 ILCS 750/15 (West 2000)), provides that "the Attorney General shall commence judicial proceedings to enforce compliance with this Section and Section 14, where a public agency or public safety agency has failed to timely enter into such agreement or file copies thereof."

6:
Barth
 was overruled on other grounds by 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 680 N.E.2d 265 (1997).

7:
Village of Montgomery v. Illinois Commerce Comm'n
, 249 Ill. App. 3d 484, 618 N.E.2d 1295 (1993) and 
City of Peoria v. Illinois Commerce Comm'n
, 132 Ill. App. 3d 835, 477 N.E.2d 749 (1985),relied upon by the circuit court, are distinguishable on the same grounds as they both involved administrative review of Illinois Commerce Commission orders.