2019 IL App (4th) 180777

FILED
October 16, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| ALAN GILMORE, CHARLES ELLIOTT, DAVID GRIFFITH, BRIAN JANES, JOSEPH BUTLER, MICHAEL CHISM, MAX COX, DONALD ARTHUR HALL, ANDY ADAIR, JOE REESE, OREN LOCKHART, DAVID McSCHOOLER, GERRY PROTZ, JUD McKENZIE, DARRYL CARMAN, W. TIM BRAGG, GINA LOCKHART, MORRIS SPARR, BRUCE GRAFTON, STEVE HORATH, JUDY O'DELL, MICK WELCH, RONALD SCOTT, CHARLES APPLEGATE, WILLIAM BOYLE, JIM NEASON, ROBERT ZSCHAU, GEORGE GULLION, GERALD NICHOLS, CLARENCE GILLESPIE, DENNIS WILSON, JOHN ARNETT, JAMES VAUGHT, JACK HELDMAN, MITCH STRADER, TERRY BARTELS, EDWARD JOHNSON, STEVEN WILLIAMS, and ROGER CLAXON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Coles County No. 12L1 |
|     Plaintiffs-Appellants, | ) | |
|     v. | ) | Honorable |
| THE CITY OF MATTOON, | ) | Steven L. Garst, |
|     Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Steigmann and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        In October 2017, plaintiffs Alan Gilmore, Charles Elliott, David Griffith, Brian

Janes, Joseph Butler, Michael Chism, Max Cox, Donald Arthur Hall, Andy Adair, Joe Reese,

Oren Lockhart, David McSchooler, Gerry Protz, Jud McKenzie, Darryl Carman, W. Tim Bragg,

Gina Lockhart, Morris Sparr, Bruce Grafton, Steve Horath, Judy O'Dell, Mick Welch, Ronald Scott, Charles Applegate, William Boyle, Jim Neason, Robert Zschau, George Gullion, Gerald Nichols, Clarence Gillespie, Dennis Wilson, John Arnett, James Vaught, Jack Heldman, Mitch Strader, Terry Bartels, Edward Johnson, Steven Williams, and Roger Claxon, who are retired firefighters, police officers, and municipal employees, filed a sixth amended complaint against the City of Mattoon (City), alleging violations of the Illinois Insurance Code (215 ILCS 5/367f, 367g, 367j (West 2010)), violations of the equal protection clause of the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV), breach of contract, promissory estoppel, unjust enrichment, and violation of the pension protection clause of the Illinois Constitution (Ill. Const. 1970, art. XIII, § 5) based upon the claim the City required them to pay a higher contribution toward health insurance premiums, as retired employees, than the contribution paid by active employees. The trial court, prompted by the City's combined section 2-615 and 2-619 (735 ILCS 5/2-615, 2-619(a)(9) (West 2010)) motions, dismissed the counts claiming violations of the Insurance Code, breach of contract, promissory estoppel, unjust enrichment, and a violation of the pension protection clause. The court allowed plaintiffs' allegations pursuant to the equal protection clause to proceed; however, the plaintiffs' request for attorney fees was stricken.

¶ 2        On appeal, plaintiffs argue the trial court erred by finding (1) they did not have standing under the Insurance Code, (2) their claims for breach of contract and promissory estoppel are barred by the Frauds Act (740 ILCS 80/0.01 *et seq.* (West 2010)), (3) they failed to state a claim for breach of contract, promissory estoppel, or unjust enrichment, and (4) they failed to state facts sufficient to constitute a violation of the pension protection clause. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4          In January 2012, a group of 59 retired firefighters, police officers, and municipal

employees, including plaintiffs, filed a 13-count complaint, which consisted of four basic

categories of claims: (1) violations of the Insurance Code, (2) injunctive and declaratory relief

under the Insurance Code, (3) breach of contract based on alleged violations of the collective

bargaining agreements between the three different groups of municipal employees and the City,

and (4) alleged violations of rights protected by the United States Constitution. All 13 counts

were based on the claim the City was requiring higher health insurance contributions by retired

employees than the contributions required of those who were actively employed in the three

identified categories. Over the course of litigation, the City filed multiple motions to dismiss

pursuant to sections 2-615 and 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-615, 2-

619(a)(9) (West 2010)), to which plaintiffs responded by seeking leave to amend their complaint.

For their third amended complaint filed in September 2013, plaintiffs filed 14 counts realleging

substantially the same claims as they had previously in counts I through XII of their first and

second amended versions. Counts I, V, and IX again claimed violations of sections 367f, 367g,

367j of the Insurance Code (215 ILCS 5/367f, 367g, 367j (West 2010)), which cover firefighters,

police officers, and municipal employees, respectively. Plaintiffs contended, in those counts,

being required to pay a higher contribution toward their health care premiums was

discriminatory and entitled them to money damages based on violations of their respective

continuation privileges contained in the Insurance Code. Counts II, VI, and X of the complaint

sought injunctive relief based on the alleged violation of the statutes, and counts III, VII, and XI

requested declaratory relief because of the alleged violations of the Insurance Code. Plaintiffs

alleged in counts IV, VIII, and XII that the City violated the equal protection clause of the

fourteenth amendment of the United States Constitution by forcing them to pay higher contributions toward their health insurance premiums and treating similarly situated retired and active firefighters, police officers, and municipal employees differently, which was discriminatory, based on their respective pension benefits. Count XIII was a breach of contract claim, alleging the City breached a contract with plaintiffs which they said arose from information and promises contained in an Illinois Municipal Retirement Fund (IMRF) form, a premium deduction authorization form for continuing health insurance through an employer, the IMRF website, and certain unidentified communications from the City. According to plaintiffs, these sources created a contract whereby the City agreed to provide health insurance benefits to retired employees under the same terms and rates as active employees in exchange for plaintiffs' early retirement. The last count, count XIV, claimed a violation of the pension protection clause of the Illinois Constitution as a result of the City increasing the contributions for health insurance premiums to be paid by plaintiffs beyond those paid by active employees, thereby decreasing or diminishing the benefits to which they were otherwise entitled after their retirement.

¶ 5        Plaintiffs contended the City adopted an early retirement incentive (ERI) program for its IMRF employees whereby all IMRF employees age 50 and over with 20 years of creditable service were allowed to purchase up to five more years of service in exchange for "immediate retirement." Plaintiffs further contend Bill Pettry, an IMRF representative, informed them at an informational meeting about the ERI program that "in exchange for retaining health insurance benefits at the same rate or cost to them as active employees[,] they could purchase service credits under ERI." Plaintiffs accepted defendant's offer by submitting a "notice of intent to retire," which they say bound defendant to the agreement that plaintiffs' health insurance contributions would remain at the same level as active employees. Plaintiffs allege defendant

breached the contract when it increased the amount of their premium rates compared to active employees.

¶ 6　　　　In October 2013, the City filed a fourth motion to dismiss, which asserted plaintiffs (1) lacked standing under the Insurance Code, (2) failed to state a claim under the equal protection clause, (3) were not entitled to injunctive or declaratory relief since plaintiffs' claims were predicated on the Insurance Code, and (4) failed to state a claim under a breach of contract cause of action or a violation of the Illinois Constitution.

¶ 7　　　　In March 2014, the trial court issued its ruling on the motion to dismiss and found there is no private right of action "available under the Insurance Code," which resulted in the dismissal of the counts relating to the Insurance Code (counts I, II, III, V, VI, VII, IX, X, and XI) with prejudice under section 2-619. The court dismissed plaintiffs' breach of contract and equal protection claims under section 2-615 and granted leave to refile. The court denied the motion to dismiss for the violation of the pension protection clause claims.

¶ 8　　　　In May 2014, plaintiffs filed a fourth amended complaint, which included the same claims raised previously along with an additional claim of promissory estoppel labeled as count XIV, with the pension protection claim renumbered as count XV. The City filed a motion to dismiss all counts except IV, VIII, and XII, which alleged violations of the equal protection clause. The City filed answers and affirmative defenses, contending both failure to state a claim and that plaintiffs did not constitute a protected class. In September 2014, the trial court found plaintiffs had pleaded sufficient facts to proceed to discovery on their breach of contract and promissory estoppel claims.

¶ 9　　　　After written discovery, a motion by the City for a more definite statement resulted in the filing of a sixth amended complaint in October 2017, adding a claim of unjust

enrichment and reducing the number of plaintiffs from 59 to the 39 named plaintiffs here. Plaintiffs realleged the claims based on the Insurance Code (counts I, II, III, V, VI, VII, IX, X, and XI), which had been dismissed, as well as the equal protection claims (counts IV, VIII, and XII). In counts XIII and XIV, dealing only with plaintiffs who are retired municipal employees, they alleged breach of contract, or alternatively, promissory estoppel. Counts XV and XVI, relating to all plaintiffs, raised claims of unjust enrichment and a violation of the pension protection clause, respectively. The unjust enrichment claim was based on plaintiffs' theory the City was not permitted to require them to contribute more toward their health insurance premiums than current employees and, as a result, plaintiffs should be permitted to recoup the "excess premiums" paid. The City sought dismissal of counts XIII through XVI of the sixth amended complaint, asserting the claims were unenforceable under the Frauds Act (740 ILCS 80/0.01 *et seq.* (West 2010)), failed to state a claim, or were brought under the Insurance Code, which does not provide a private right of action. In August 2018, the trial court granted the City's motion to dismiss with prejudice. Previously, in December 2017, plaintiffs sought and received a Rule 304(a) finding from the trial court on counts I through XI of the third amended complaint, which had already been dismissed by the court with prejudice. See Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). After the court's order in August, dismissing counts XIII, XIV, XV, and XVI of the sixth amended complaint, plaintiffs sought an additional Rule 304(a) finding as to those counts as well since the court's orders left count XII, the equal protection claim, pending.

¶ 10    We note an apparent scrivener's error in the trial court's opinion letter of August 7, 2018, wherein the court mentions count XII, the equal protection claim, as dismissed with prejudice and appealable in its finding, while failing to mention the breach of contract claim in

count XIII, which was, in fact, dismissed with prejudice. As such, we will proceed with the understanding count XIII and not count XII was intended to be final and appealable by the court's order.

¶ 11    This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13                                    A. Standing

¶ 14    Plaintiffs argue the Insurance Code permits them standing to bring a private right of action under the Insurance Code. We disagree.

¶ 15    Our supreme court stated unequivocally in *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 301, 856 N.E.2d 422, 439 (2006), "a private right of action is not available" in the Insurance Code. In *Weis v. State Farm Mutual Automobile Insurance Co.*, 333 Ill. App. 3d 402, 406, 776 N.E.2d 309, 311 (2002), the Second District noted a plaintiff cannot plead a private cause of action pursuant to the Insurance Code as enforcement is delegated to the Department of Insurance. The Insurance Code provides that " '[t]he Director [of the Department of Insurance] is charged with the rights, powers and duties appertaining to the enforcement and execution of all the insurance laws of this State.' " *Weis*, 333 Ill. App. 3d at 406 (quoting 215 ILCS 5/401 (West 2000)). Examining another provision of the Insurance Code, the First District in *Hamilton v. Safeway Insurance Co.*, 104 Ill. App. 3d 353, 356-57, 432 N.E.2d 996, 999 (1982), found a private cause of action could not lie where certain actions, although possibly considered improper under the Insurance Code, provided no personal remedy. Although the Director had authority to take action, "[s]uch relief is unavailable to [private persons] because '[t]he legislature, had it intended to grant a private right of action for injunctive relief, would have explicitly done so.' " *Safeway Insurance Co.*, 104 Ill. App. 3d at 356-57 (quoting *Brooks v.*

*Midas-International Corp.*, 47 Ill. App. 3d 266, 277, 361 N.E.2d 815, 822 (1977)). In *Village of McCook v. Illinois Bell Telephone Co.*, 335 Ill. App. 3d 32, 38, 780 N.E.2d 335, 341 (2002), the First District relied upon statutory interpretation to find no private right of action within provisions of the Illinois Emergency Telephone System Act (50 ILCS 750/0.01 *et seq.* (West 2000)) for the same reason. Looking at the language of the statute, the court found the Attorney General was invested with the authority to enforce violations of the statute. *Illinois Bell Telephone Co.*, 335 Ill. App. 3d at 38. Here, the legislature has given that authority to the director of the Department of Insurance.

¶ 16        As noted by the City, where no express language exists in the statute authorizing a private right of action, the supreme court has outlined four factors to consider when deciding whether such a right may exist by implication. *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460, 722 N.E.2d 1115, 1117-18 (1999). There, it found the Nursing Home Care Act (210 ILCS 45/3-608 (West 1996)) did not imply a private right of action for employees claiming retaliation by their employer, as it stated courts are to look at whether:

> "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Fisher*, 188 Ill. 2d at 460.

See also *Metzger v. DaRosa*, 209 Ill. 2d 30, 805 N.E.2d 1165 (2004) (reaffirming application of the factors under circumstances similar to those present here).

¶ 17 Having chosen not to argue the four-factor test in support of their claimed private right of action in the trial court, or to claim an implied right existed under the statute, plaintiffs are foreclosed from doing so now. *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 507, 689 N.E.2d 1119, 1123 (1997) ("[I]t is required that the points argued on appeal be commensurate with the issues presented at trial." (Internal quotation marks omitted.)). Further, Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) states arguments raised for the first time in a reply brief, as plaintiffs seek to do here, are forfeited.

¶ 18 Although plaintiffs contend a private right of action under the Insurance Code was approved by the supreme court's decision in *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 2018 IL 122558, 104 N.E.3d 1239, their reliance on *Thounsavath* is somewhat confusing. Plaintiffs fail to mention standing was not the issue before the supreme court in that case and, in fact, was never mentioned. Instead, the issues in *Thounsavath* arose from a declaratory judgment action related to the extent of underinsured motorist coverage under the terms of a motor vehicle insurance policy.

¶ 19 In *Thounsavath*, 2018 IL 122558, ¶ 5, the plaintiff sought underinsured motorist coverage from the defendant due to an automobile accident while she was a passenger in a vehicle operated by Clinton Evans. The defendant denied the claim pursuant to its driver exclusion endorsement because Evans was on its excluded driver list. The plaintiff filed a complaint against the defendant for a declaratory judgment, "seeking a declaration that she was entitled to underinsured motorist coverage under her State Farm policies." *Thounsavath*, 2018 IL 122558, ¶ 6.

¶ 20 The case involved the interpretation of the plaintiff's insurance policy as it related to underinsured motorist coverage. *Thounsavath*, 2018 IL 122558, ¶ 6. It is inapplicable to the

situation before us and does not create standing for a cause of action under the Insurance Code. Plaintiffs can point to no provision within the Insurance Code setting forth a remedy entitling them to the private claims they seek to assert here. In fact, plaintiffs have ignored the plain language of the statutes in their discussion of continued group insurance coverage that addresses this issue: "provided that no municipality shall be required by reason of any provision of this Section to pay any group insurance premium other than one that may be negotiated in a collective bargaining agreement." 215 ILCS 5/367f(3)(b), 367g(3)(b), 367j(b) (West 2010). Plaintiffs, as retirees, are not covered by the collective bargaining agreements—a point they conceded and argued before the trial court in support of their claims for unjust enrichment. After careful review of the statutes and collective bargaining agreements, the trial court correctly noted neither contained language obligating the City to pay any portion of insurance premiums for retirees. The court found plaintiffs were entitled to continued coverage that is "equivalent" to that provided active employees at the same total premium cost. Nothing in the Insurance Code or any writing upon which plaintiffs rely entitles them to the same employer share or percentage contribution provided by the City to current employees. As our supreme court has stated, no private right of action exists under the Insurance Code, and thus, the trial court correctly dismissed those counts based on claimed Insurance Code violations.

¶ 21                                    B. Frauds Act

¶ 22         Plaintiffs allege the trial court erred when it dismissed their claims for breach of contract and promissory estoppel due to the Frauds Act (740 ILCS 80/1 *et seq.* (West 2010) (also known as the statute of frauds)). We disagree.

¶ 23        A section 2-619 dismissal is appropriate when "the claim asserted is unenforceable under the provisions of the Statute of Frauds." 735 ILCS 5/2-619(a)(7) (West 2010).

> "No action shall be brought *** upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." 740 ILCS 80/1 (West 2010).

¶ 24        Plaintiffs contend, correctly, the Frauds Act can be satisfied from statements made in more than one document. *American College of Surgeons v. Lumbermens Mutual Casualty Co.*, 142 Ill. App. 3d 680, 698-99, 491 N.E.2d 1179, 1192 (1986). However, to satisfy the Frauds Act, "all the essential terms must be in writing, and there must be an express reference to the other writings or such a connection between the documents, physical or otherwise, as to demonstrate that they relate to the same contract." *Dickens v. Quincy College Corp.*, 245 Ill. App. 3d 1055, 1060, 615 N.E.2d 381, 384 (1993).

¶ 25        Here, plaintiffs allege the Frauds Act does not apply because most of the essential terms of the contract were in writing. However, they point to a patchwork of oral statements made by an IMRF representative, not a City employee or representative, in an informational meeting on August 20, 2001, forms and excerpts from an IMRF handbook published by the state and available on its website, the ERI resolution adopted by the City, and portions of the respective collective bargaining agreements with the City. Plaintiffs' brief states, "the contract

between Plaintiffs and Defendants is largely written, and contains only a small portion related to the August 20, 2001 meeting." The "small portion" to which they refer, and which plaintiffs acknowledge to be absent from their written submissions, happens to be the most important component—the alleged promise by the City to allow plaintiffs to keep their health insurance coverage with the same level of contribution as those actively employed by the City. Despite their characterization, the entire "contract" and basis for their claims turn on that provision. The trial court noted this omission in its August 7, 2018, order, concluding it was the "essential term" plaintiffs sought to enforce and, as such, needed to be in writing. We agree. If the group of documents intended to constitute the "writing" are intended to defeat the Frauds Act, the various documents must, when read together, either contain all the terms and conditions of the contract or at least reference them in some way. See *Prodromos v. Howard Savings Bank*, 295 Ill. App. 3d 470, 474, 692 N.E.2d 707, 710 (1998). The crux of plaintiffs' case is the purported "promise" by an IMRF representative not employed by, or working on behalf of the City, who plaintiffs say told them at an informational meeting their contributions for health care would remain the same as for those who were still employed. It is also important to note a contract that is partly oral and partly written is considered oral for its legal effect. *Koch v. Illinois Power Co.*, 175 Ill. App. 3d 248, 255, 529 N.E.2d 281, 286 (1988).

¶ 26 Normally, in order to comply with the Frauds Act, the writing must show the existence of a contract as well as its relevant terms and conditions. *Culbertson v. Carruthers*, 66 Ill. App. 3d 47, 54, 383 N.E.2d 618, 624 (1978). Plaintiffs argue the contract, here, is a *Duldulao* contract (*Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318 (1987)). In *Duldulao*, 115 Ill. 2d at 490, the supreme court found, under certain circumstances, the language of an employee handbook or policy statement may create an

enforceable contract if all elements of contract formation are present. Plaintiffs contend the ERI resolution, the letter sent to all plaintiffs about the early retirement option, and statements made in the IMRF handbook and website, along with the specific oral "promise" by Pettry, constitute policy statements allowing for the creation of a *Duldulao* contract, which offered plaintiffs continued health insurance coverage paid for in the same manner as active employees if plaintiffs accepted early retirement. Defendants accurately note that none of the various writings are part of an employee handbook or employment policy of the City—those things which the supreme court found could constitute the basis for a *Duldulao* contract under proper circumstances. More importantly, even those contracts are "governed by the traditional requirements for contract formation." *McInerney v. Charter Golf, Inc.*, 176 Ill. 2d 482, 487, 680 N.E.2d 1347, 1350 (1997). Unfortunately, none of the writings reference the alleged oral promise, a requirement when a contract is sought to be formed from multiple writings, and therefore cannot constitute the basis for a *Duldulao* contract. The trial court aptly pointed out how neither the ERI resolution nor IMRF form—the only documents clearly tied to the program in question here—contained any reference to health insurance at all.

¶ 27        In addition, it is clear, under plaintiffs' scenario, defendant's obligation for health insurance contributions was going to last longer than a year, thus putting it squarely within the Frauds Act, and therefore unenforceable as a contract for the lifetime receipt of health insurance benefits under the terms alleged by plaintiffs. See *Charter Golf, Inc.*, 176 Ill. 2d at 493 (stating an oral lifetime employment contract is unenforceable under the Frauds Act); see also *Underwood v. City of Chicago*, 2017 IL App (1st) 162356, ¶ 50, 84 N.E.3d 420 (finding oral assurances of health care coverage for life violates the Frauds Act unless it is also in writing). As

a result, the trial court's dismissal of counts XIII and XIV for violating the Frauds Act was not error.

¶ 28                                    C. Failure to State a Claim

¶ 29            Plaintiffs argue the trial court erred in dismissing their breach of contract, promissory estoppel, and unjust enrichment counts based on a failure to state a claim. We disagree.

¶ 30            Plaintiffs Gilmore, Carman, Elliot, O'Dell, and McKenzie retired pursuant to the City's 2009 IMRF ERI program and were not a part of the 2001 ERI program during which plaintiffs contend the oral promise was made. The original 2001 ERI program ran from December 15, 2001, to December 15, 2002, and none of the four aforementioned plaintiffs retired before June 2009. Even if an oral contract existed, as we noted above, it could not have extended beyond one year to be enforceable under the Frauds Act and could not serve as a basis for a claim here. The complaint alleges the oral offer was made to the four plaintiffs in 2001 and was accepted. However, the discovery referenced by the parties in this case shows they were not eligible to retire under the program at that time. They have acknowledged they did not participate in the 2001 program. Plaintiffs fail to allege how, or by what means, the offer of 2001 could be binding on the City in 2009 since they fail to allege the offer was made again. Further, although plaintiffs contend the promise was made to them by Pettry, there is no allegation identifying who Pettry was at the time or how he had the ability to bind the City to anything. As a result, the trial court was correct in concluding plaintiffs failed to allege the existence of a contract. This is equally significant for count XIV, the claim for promissory estoppel. The court's written order of August 3, 2018, correctly noted that in order to support such a claim, plaintiffs must plead specific facts showing: "(1) an affirmative act by the municipality itself or a municipal official

with express authority to bind the municipality; and (2) reasonable reliance upon that act by the plaintiff that induces the plaintiff to detrimentally change their position." See *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 40, 976 N.E.2d 318. Where public bodies are involved, estoppel will only apply where, in addition to the above, plaintiffs can also show how it is necessary to prevent fraud or injustice. *Rockford Life Insurance Co. v. Department of Revenue*, 112 Ill. 2d 174, 185, 492 N.E.2d 1278, 1283 (1986). Further, apparent authority has not been found applicable against municipalities. *Patrick Engineering*, 2012 IL 113148, ¶ 35. Plaintiffs failed to plead or establish any facts which identified Pettry as someone other than an IMRF representative present at an informational meeting to answer any questions about the new IMRF ERI program. Plaintiffs failed to plead how he was invested with any authority to bind the City to any "promise" or agreement, and at the time of the meeting, the four above-named individuals would have done nothing in detrimental reliance since they were not eligible to take advantage of the program at the time. Further, there has been no allegation of fraud or injustice. As such, the court also did not err in dismissing the counts as to those plaintiffs for failing to state a claim for relief under the doctrine of promissory estoppel.

¶ 31        Plaintiffs' unjust enrichment claim is based on defendant allegedly violating the Insurance Code. Unjust enrichment " 'is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, and may be redressed by a cause of action based upon that improper conduct.' " *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (1995) (quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill. App. 3d 84, 90-91, 484 N.E.2d 349, 354 (1985)). An unjust enrichment cause of action " 'does not require fault or illegality on the part of [the] defendants; the essence of the cause of action is that one party is

enriched and it would be unjust for that party to retain the enrichment.' " *Fortech, L.L.C. v. R.W. Dunteman Co.*, 366 Ill. App. 3d 804, 818, 852 N.E.2d 451, 463 (2006) (quoting *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 864, 692 N.E.2d 798, 812 (1998)). As we have stated above, the plaintiffs lacked standing for the foundational claim of a violation of the Insurance Code; therefore, standing for the derivative claim of unjust enrichment is also deficient because the City's actions were not improper.

¶ 32        Plaintiffs alleged both the statutory language of sections 367f, 367g, and 367j of the Insurance Code and a common law claim for breach of contract as the basis for their claim of unjust enrichment. As noted, there is nothing in the statutes that obligated the City to contribute any portion of the total premium costs, let alone the same amount or percentage of health care costs. In addition, plaintiffs failed to properly allege a contract that the City could have breached. There is, therefore, no foundational claim upon which plaintiffs can rely to argue unjust enrichment. The trial court correctly dismissed the claim, concluding the plain language of the statutes revealed the City is required to allow retirees to elect to continue their health insurance through it and it is not permitted to charge retirees more than the total premium cost of health insurance for active employees. Although the percentages of the contributions differ, the total amounts do not, and the City is in compliance with the Insurance Code. Absent a violation of the Insurance Code or a contract to be breached, there is no basis upon which to claim the City has been unjustly enriched.

¶ 33                    D. Pension Protection Clause

¶ 34        Plaintiffs argue the City violated the pension protection clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. XIII, § 5) because it changed its employer health insurance contribution for retired employees. We disagree.

- 16 -

¶ 35        "[B]ecause resolution of this issue requires us to determine the applicability and effect of the pension protection clause *** , our review is *de novo*." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 53, 51 N.E.3d 753. The pension protection clause of article XIII, section 5 of the Illinois Constitution of 1970 states:

> "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5.

¶ 36        "[M]embers of pension plans subject to its provisions have a legally enforceable right to receive the benefits they have been promised." *In re Pension Reform Litigation*, 2015 IL 118585, ¶ 46, 32 N.E.3d 1. "[I]f something qualifies as a benefit of the enforceable contractual relationship resulting from membership in one of the State's pension or retirement systems, it cannot be diminished or impaired." *Kanerva v. Weems*, 2014 IL 115811, ¶ 38, 13 N.E.3d 1228. This does not mean, however, a municipality is required to protect all benefits it provides to its employees.

¶ 37        In *Dawson v. City of Geneseo*, 2018 IL App (3d) 170625, ¶ 1, 127 N.E.3d 655, a retired city employee sued, claiming the city's reduction of their percentage of contribution to his health insurance premiums was in violation of the pension protection clause (Ill. Const. 1970, art. XIII, § 5). The city's successful section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2016)), contended, among other things, that the plaintiff failed to state a claim for a violation of the pension protection clause. Asked to determine whether the claim was properly dismissed, the Third District found "the health insurance contribution was merely part of the City's

- 17 -

employment policy and was offered to all employees and to retirees with 10 or more years of service, regardless of the employee's or retiree's membership in a public pension or retirement system." *Dawson*, 2018 IL App (3d) 170625, ¶ 13 (citing *Pisani v. City of Springfield*, 2017 IL App (4th) 160417, ¶¶ 25-32, 73 N.E.3d 129). The court said the defendant was free to change its employment policy and reduce the health insurance contribution without violating the pension protection clause, so it was impossible for the plaintiffs to plead facts sufficient to establish a violation thereof. *Dawson*, 2018 IL App (3d) 170625, ¶ 13.

¶ 38        In *Pisani*, 2017 IL App (4th) 160417, ¶ 25, this court was asked to determine whether the defendant's elimination of a vacation buyback provision in its ordinance violated the pension protection clause. We stated the plaintiff had a pension contract with the State of Illinois, not the defendant. "Because the vacation buyback provision was in defendant's ordinance instead of in Illinois statutory law, it was not a benefit of the 'contractual relationship' to which the pension protection clause refers." *Pisani*, 2017 IL App (4th) 160417, ¶ 26. The court distinguished cases such as *Kanerva* and *Pension Reform Litigation*, explaining in those cases the General Assembly attempted to modify the pension contract through amendment to Illinois law. We clarified, in *Pisani*, 2017 IL App (4th) 160417, ¶ 27, the defendant "had an employment policy, which was expressed in an ordinance, and [the] defendant revised its employment policy by passing another ordinance." This court found the provision was not a benefit of membership in a pension system of the State. "If it were, *all* members of the [IMRF] would have had the vacation buyback option, simply by virtue of being members of the [IMRF]—but they did not." (Emphasis in original.) *Pisani*, 2017 IL App (4th) 160417, ¶ 28.

¶ 39        While we recognized the terms and conditions of the plaintiff's employment contract with the defendant had a tangible effect on his pension benefits, our supreme court in

*Peters v. City of Springfield*, 57 Ill. 2d 142, 151-52, 311 N.E.2d 107, 112 (1974), held the pension protection clause did not apply to terms of employment, even when the changes to the terms would cause employees to receive a smaller pension. *Pisani*, 2017 IL App (4th) 160417, ¶ 29. As there was no change to the Illinois Pension Code (40 ILCS 5/7-101 *et seq.* (West 2014)) by the General Assembly, we concluded the trial court did not err in granting summary judgment for the defendant and ruling the pension protection clause did not apply. *Pisani*, 2017 IL App (4th) 160417, ¶ 32.

¶ 40    In this case, the City, as a municipality employer, created an ordinance allowing for early retirement in exchange for the ability to purchase up to five years of extra credit in the State's IMRF pension plan. According to plaintiffs, the City also promised to provide health insurance contributions at the same rate as active employees. However, as stated, these changes were all part of the terms of employment between the City and plaintiffs, not something which involved their IMRF pensions directly. Under this set of facts, a plaintiff cannot properly state a claim against a defendant municipality based on a violation of the pension protection clause. Nothing found in the relevant Insurance Code sections or the various submissions by plaintiffs relating to their IMRF retirement benefits even mentioned health insurance contributions. This was a part of the City's employment policy and not the State's pension system. The City was free to change its employment policy and reduce its contributions toward health insurance as long as it did not charge plaintiffs more, in overall cost, than current employees. It was clear from the evidence the total costs were the same. Therefore, plaintiffs could not bring a claim under the pension protection clause, and the trial court correctly dismissed the action with prejudice.

¶ 41                        E. Other Matters

¶ 42    We commend the trial court for its thorough and reasoned analysis in its 12-page opinion letter. Carefully drafted and well-supported by case citations, such orders are of great assistance to courts of review by clearly setting forth the trial court's findings and reasoning and should be encouraged.

¶ 43                            III. CONCLUSION

¶ 44    For the reasons stated, we affirm the trial court's judgment.

¶ 45    Affirmed.

**No. 4-18-0777**

| | |
|---|---|
| **Cite as:** | *Gilmore v. City of Mattoon*, 2019 IL App (4th) 180777 |
| **Decision Under Review:** | Appeal from the Circuit Court of Coles County, No. 12-L-1; the Hon. Steven L. Garst, Judge, presiding. |
| **Attorneys for Appellant:** | Jennifer Stuart and H. Kent Heller, of Heller, Holmes & Associates, P.C., of Mattoon, for appellants. |
| **Attorneys for Appellee:** | Julia A. Proscia and Michael D. Wong, of SmithAmundsen LLC, of St. Charles, and Michael Resis, of SmithAmundsen LLC, of Chicago, for appellee. |